[Civ. No. 548.   Third Appellate District.—March 18, 1909.]

CATHERINE KRAMM, Administratrix, etc., Appellant, v. STOCKTON ELECTRIC RAILROAD COMPANY, a Corporation, Respondent.

ACTION FOR DEATH—COLLISION OF WAGON WITH ELECTRIC CAR—CONTRIBUTORY NEGLIGENCE—WANTON NEGLIGENCE NOT SHOWN—NEW TRIAL—DISCRETION OF COURT.—In an action for death alleged to have been caused by the negligence of the defendant in causing its electric car to collide with the wagon of deceased, in which the verdict was for the plaintiff, and the court granted a new trial, on the grounds that the evidence showed beyond a reasonable doubt the contributory negligence of the deceased, and showed the comparatively slow speed of the car, and failed to show any willful or wanton negligence on the part of the motorman, or that he had the last clear opportunity to avoid the accident when he realized the danger—*held*, in view of the evidence of the motorman, which the court had the right to believe, it cannot be said that the court abused its discretion in granting the new trial.

ID.—RULES AS TO GRANTING NEW TRIAL AFTER VERDICT.—The granting of a new trial after verdict does not rest in the mere arbitrary or personal will of the judge; but it does rest in the exercise of his sound discretion. If the case shows a reasonable or fairly debatable justification for the order, it will not be set aside upon appeal, even if, as a case of first impression, this court might take a different view from that of the court below, especially when the question is largely one of fact, and involves the proper deductions to be drawn from the evidence. When fair and impartial men might reasonably differ in their deductions from the evidence, it cannot be said that the order granting the new trial is unsupported and unwarranted, viewed, as it must be, in the light of the obvious advantages possessed by the trial court in the determination of the weight of the evidence and the credibility of the witnesses.

ID.—DUTY OF TRIAL JUDGE.—If the trial judge, after giving due credit to the verdict of the jury, is not satisfied with the verdict, and is convinced that it is clearly against the weight of the evidence, he must exercise his own independent judgment, and it is his duty to set it aside.

ID.—PRESUMPTION OF PERFORMANCE OF DUTY.—It must be presumed upon appeal from the order granting the new trial, after verdict, that the judge acted according to his honest convictions of duty, when there is no evidence of any bias or prejudice

on his part, and nothing to show that the evidence cannot be fairly interpreted in favor of his ruling.

ID.—CONCLUSIONS FROM EVIDENCE OF MOTORMAN.—When there was nothing inherently improbable in the evidence of the motorman, and giving it full credence, as the trial judge might do, the conclusion followed therefrom, not only that the deceased was guilty of contributory negligence, but also that the motorman did everything to avert the accident that can be demanded of any reasonable man.

ID.—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS.—It is to be presumed that a person of mature years will not stand still upon a railroad track and suffer himself to be run down, and that he is in possession of his senses, and will exercise ordinary diligence, in time of danger, to take care of himself. In view of these presumptions, an engineer or motorman, who has given the proper signals, can presume that before he is reached he will turn aside, and has the right to act upon that presumption, until it may be too late to avoid collision.

ID.—ATTENTION OF DECEASED ENGROSSED WITH BUSINESS NOT EXCUSABLE.—It is no excusable answer to the rule of presumptions, that the attention of the deceased was attracted by a water wagon near the track, and was so engrossed therewith that he did not see or hear the approaching car. He had no right to be so engrossed in his own business in such dangerous position as to be negligent of his own safety.

ID.—LAW OF CASE—DECISION UPON FORMER APPEAL FROM JUDGMENT OF NONSUIT—SECOND APPEAL FROM ORDER GRANTING NEW TRIAL. The decision upon a former appeal based upon a judgment of nonsuit, upon which the evidence was to be considered most favorably to the plaintiff, is not the law of the case, upon a second appeal from an order granting a new trial, after verdict for the plaintiff, involving the credibility of witnesses and conflicting inferences of fact from the evidence.

ID.—DOCTRINE OF LAW OF CASE—MATTERS OF EVIDENCE.—The doctrine of the law of the case presupposes error in applying a principle of law applicable to the facts of a case under review, and it is rarely applied to matters of evidence, as distinguished from rulings of law, unless the evidence stands in the same relation to the same rule of law. When the evidence stands in a distinct relation, and involves questions of fact, and of the weight of evidence, not involved in the former appeal, the doctrine of the law of the case is inapplicable.

APPEAL from an order of the Superior Court of San Joaquin County granting a new trial. F. H. Smith, Judge.

The facts are stated in the opinion of the court.

Jacobs & Flack, for Appellant.

Arthur L. Levinsky, and Budd & Thompson, for Respondent.

BURNETT, J.—The action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of defendant. There have been three trials of the case, in the first of which a jury found a verdict for plaintiff, which was set aside and a new trial granted by the trial judge; in the second a motion for a nonsuit was granted and the order was reversed by this court (*Kramm* v. *Stockton Elec. R. R. Co.*, 3 Cal. App. 606, [86 Pac. 738, 903]); in the last trial a jury again found a verdict for plaintiff and the trial judge set aside this verdict and granted the motion for a new trial, and from this order the appeal is taken.

It is admitted that the evidence was virtually the same at all these trials, the defendant calling no witnesses, but relying upon the testimony of the witnesses for plaintiff. This evidence was reviewed at considerable length by this court in said appeal, and it was therein said, through Presiding Justice Chipman: "To our minds it is quite obvious that there was sufficient evidence in support of plaintiff's case to require that it be passed upon by the jury. . . . Without further noticing the evidence or further comment, in our judgment the case should have gone to the jury, because, among other reasons, the jury as presumably 'sensible and impartial' men might have decided that the deceased exercised ordinary care (*Herbert* v. *Southern Pacific Co.*, 121 Cal. 230, [53 Pac. 651]), or that the motorman 'had the last clear opportunity to avoid the injury,' in which case it was his duty to have done so. (*Esrey* v. *Southern Pacific Co.*, 103 Cal. 541, [37 Pac. 500]; *Lee* v. *Market St. Ry. Co.*, 135 Cal. 293, [67 Pac. 765].)"

In his opinion granting the motion for a new trial the learned judge of the court below declared: "The Court is satisfied: First—of the contributory negligence of the decedent, and that this is shown not only by a preponderance of the evidence but beyond any reasonable doubt. Second—

that the speed of the car did not exceed eight miles an hour, and that this is shown by a preponderance of the evidence. Third—The plaintiff has failed to show wilful or wanton negligence on the part of the motorman as the same is defined by our Supreme Court. Fourth—That plaintiff failed to show and that the evidence was insufficient to justify the conclusion that the motorman had the last clear opportunity to avoid the accident, when he realized the danger in which decedent had placed himself. The Court is therefore constrained to hold that the verdict is not supported by the evidence. The Court has been very reluctant to reach this conclusion; first, because it is always very loath to set aside the verdict of a jury under any circumstances; and secondly, on account of the decision of the Appellate Court on motion for a nonsuit. But bearing in mind that the Appellate Court in deciding that motion had 'nothing to do with the question of the credibility of the witnesses, nor with testimony tending to create a conflict, nor with any apparent disagreement as to the facts among plaintiff's witnesses' and that the evidence on such motion not only had to 'be viewed most strongly against defendant but most favorably to plaintiff' and being constrained after several critical examinations of the evidence to believe that the verdict is not supported by the evidence, the Court will grant a new trial.''

The foregoing naturally suggests the inquiry to what extent a trial judge is bound by the verdict of a jury and by what rule or standard must he determine a motion to set aside such verdict and grant a new trial? The subject has been frequently discussed by the supreme court. We cite the following cases: *Groppengiesser* v. *Lake,* 103 Cal. 42, [36 Pac. 1036]; *Harrison* v. *Sutter St. Ry. Co.,* 116 Cal. 161, [47 Pac. 1019]; *Green* v. *Soule,* 145 Cal. 102, [78 Pac. 337].

In the Harrison case it is said, through Mr. Justice Van Fleet: ''That the granting of a new trial is a thing resting so largely in the discretion of the trial court that its action in that regard will not be disturbed except upon the disclosure of a manifest and unmistakable abuse has become axiomatic and requires no citation of authority in its support. It is true that such discretion is not a right to the exertion of the mere personal or arbitrary will of the judge, but is a power governed by fixed rules of law, and to be reasonably

exercised within those rules to the accomplishment of justice. But so long as a case made presents an instance showing a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be here set aside, even, if as a question of first impression, we might feel inclined to take a different view from that of the court below as to the propriety of its action. More especially is this true where, as here, the question rests largely in fact, and involves the proper deduction to be drawn from the evidence.''

In the Green case, Mr. Justice Shaw says for the court: ''There is a clear and obvious distinction between the duty of a trial court and the duty of an appellate court with respect to the decision of such questions. The trial court cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it. If the judge is not satisfied with the verdict, and is convinced that it is clearly against the weight of the evidence, it is his duty to set it aside, even though there may have been some conflict in the testimony. . . . Of course the judge should give due respect to the verdict of the jury, and may sometimes properly deny a new trial in cases where if submitted to him without a jury he might upon the evidence have made a different decision. He must be clearly satisfied that the verdict is wrong; otherwise he should let it stand. But in considering the question upon the motion he must act upon his own judgment as to the effect of the evidence. The parties are entitled to the judgment of the jury in reaching a verdict, in the first instance; but upon a motion for a new trial they are equally entitled to the independent judgment of the judge as to whether such verdict is supported by the evidence.''

It is clear, therefore, that when the trial judge is satisfied that a verdict is wrong and opposed to the evidence, if he refuses to set it aside he violates his oath of office. If he acts, though, from the most conscientious consideration of his duty and sets aside the verdict, it does not necessarily follow that his order will not be disturbed by the higher court. It must stand, however, as we have seen, unless the appellate tribunal, exercising its judgment as to the record, is compelled to find that there has been an abuse of dis-

cretion. But how can we determine that the trial judge abused his discretion? We must assume, of course, that he followed his honest convictions in granting the motion. Indeed, we have no doubt that he was entirely satisfied that the verdict of the jury was wrong. He believed that the evidence, when properly considered, required a finding in favor of defendant, and in an elaborate opinion, a copy of which has been filed herein, persuasive reasons are given for that belief. After a careful examination of the voluminous record, we find no evidence of any bias or prejudice on the part of the trial judge. The case was fairly and fully tried, and the only possible justification for a reversal of the order would be the ground that the evidence cannot be fairly interpreted in harmony with the said action of the trial court—in other words, that no reasonable inference can be drawn from the evidence inconsistent with the finding of the jury.

And this consideration must be viewed, of course, in the light of the obvious advantages possessed by the trial court in the determination of the weight of the evidence and the credibility of the witnesses.

Although of the opinion that the verdict of the jury finds support in some of the evidence, giving it full credit, and inclined, as we should be, not to interfere with his action, if the trial judge had denied the motion for a new trial, yet we are convinced that fair and impartial men might reasonably differ in their deductions from the evidence, and that it cannot be said that the order granting the motion is unsupported and unwarranted.

The trial judge had confidence in the veracity of the motorman and attached much importance to his testimony. We cannot say that the confidence was misplaced, and it is obvious that the motorman was most favorably situated of all the witnesses to observe accurately just what occurred at and immediately prior to the time of the accident. The motorman relates the occurrence as follows: "When I rounded this curve" (more than six hundred feet from the scene of the accident) "I threw off my current as was customary and at the curve, rounding the curve, the car was going by its own speed or momentum from the trolley. After I left the curve I applied one or two notches of the current again, that is about half the power. I did not increase that one or two

notches up to the time I struck Mr. Kramm. As I emerged from the curve, I saw Mr. Kramm standing to the east of the east rail and at the same time I saw a water wagon to the east of the east rail and Mr. Kramm was standing between the east rail and the water wagon, at a distance of about three, three or four feet from the east rail. I rung my bell at intervals from the time I left the curve until the accident occurred. I was about one hundred feet away from Mr. Kramm when he began to back across the track until I got within about twelve feet of him and he apparently stopped; he hesitated, stopped and then I again rung my bell and applied the brakes, but my car struck him. I did everything I could at the moment I saw Mr. Kramm stop on that track to prevent the accident. From the time I saw Mr. Kramm start to back across the track he had sufficient time to get across the track if he had not stopped. I believed that he was going to cross the track. If Mr. Kramm had remained in that place where he was standing when I first saw him he would not have been struck by my car.'' He said also that the car was traveling at the rate of eight miles per hour.

It cannot be said that there is anything inherently improbable in the foregoing statement. Giving it full credence, as the trial judge had a legal right to do, the conclusion followed not only that the deceased was guilty of contributory negligence, but that the motorman did everything to avert the accident that can be demanded of any reasonable man.

The rule is universally recognized that it is to be presumed that a person of mature years will not stand still upon a railroad track and suffer himself to be run down. It is also a presumption that all men are in possession of their senses and will exercise ordinary diligence in times of danger to take care of themselves. It is in accordance with these presumptions held that when the engineer of a locomotive engine sees ahead of him a man upon the track he can presume that the man possesses ordinary capacity, that he can see and hear and reason from cause to effect, and that as a train approaches him he will step aside and not be run over. The engineer—and the same rule will apply to a motorman of an electric car—provided he gives the proper signals, has a right to act upon that presumption until it may be too late to

avoid contact. (Beach on Contributory Negligence, 3d rev ed., sec. 203.)

There is undoubtedly some difference, from the nature of things, in the degree of care required in relation to a street-car track and a steam railroad, but in either event common prudence requires from the one upon the track the careful use of the senses of sight and hearing.

In *Green* v. *Los Angeles etc. Ry. Co.*, 143 Cal. 31, [101 Am. St. Rep. 68, 76 Pac. 719], it is held that "the engineer had the right to assume that a person seen in a place of safety was in possession of natural faculties, and would not recklessly move in front of the approaching train, and was not required to stop or check the train to ascertain whether such person was about to do so; and the engineer did his whole duty in giving the alarm and trying to stop the train as soon as the person was seen tó step upon the track, though such effort was unavailing." (See, also, *Lambert* v. *Southern Pac. Ry. Co.*, 146 Cal. 231, [79 Pac. 873].) Here not only had the motorman the right to assume, but it was an actual fact, as shown by the evidence, that the deceased was in possession of his natural faculties.

It is no answer to say that the attention of the deceased was engrossed by the water wagon and therefore he did not see nor hear the approaching car. In *Wheat* v. *St. Louis*, 179 Mo. 572, [78 S. W. 790], it is said: "The contention of the plaintiff that he had a right to have his mind so engrossed in his business that he did not think of the obstruction or that he had passed it, is wholly untenable. Persons traveling on a highway are charged with a duty to exercise reasonable care to observe and avoid obstructions and defects. They have no right to be so engrossed in their own affairs as to be negligent of their own safety." In *Brett* v. *Frank & Co.*, 153 Cal. 267, [94 Pac. 1051], it is held that the preoccupation or forgetfulness which does not bar recovery as a matter of law, but raises a question for the jury "only applies in exceptional cases having to do with abnormal risks and with the performance of duties under the high tension of emergency, and where the doing of one necessary thing under the stress of immediate action does not charge a person with contributory negligence because he has omitted or forgotten another."

There is nothing in any of the cases cited by appellant discrediting the inference drawn by the trial court from the

testimony of said motorman. For illustration, we refer to *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, [98 Am. St. Rep. 85, 74 Pac. 15], to show the difference in the conditions. There the motorman discovered the perilous situation of the bicycle rider at such a time and in such circumstances that he could not, by the exercise of ordinary care, have avoided the collision, but ''notwithstanding the warnings and entreaties of bystanders to stop the car he wantonly and recklessly pushed the car forward, wher:upon the bicycle rider made all reasonable and practicable endeavors without success to avoid the collision.'' It was properly held that notwithstanding the bicycle rider's negligence the defendant was liable for the accident. It ought not to be open to controversy that the mere negligence of one actor any more in law than in morals does not excuse his wanton killing by another.

The Harrington and Green cases are not inconsistent, as claimed by respondent. This is made manifest by an examination of the opinions, but the latter and not the former is applicable here to the facts as detailed by said motorman.

We have thus treated the testimony of the motorman as acquitting the defendant of responsibility for the accident, but when we reach the conclusion that a reasonable man might draw such an inference from the evidence it is plainly our duty to affirm the order on the ground that there has been no abuse of discretion.

Appellant contends that the decision of this court on the former appeal determined the law of the case, and therefore necessitates a reversal of this order. The contention involves a misconception of the significance of ''the law of the case'' and of what was actually decided on the appeal from the judgment of nonsuit. The question of ''the law of the case'' has been recently discussed in *Allen* v. *Bryant*, 155 Cal. 256, [100 Pac. 704], wherein it is said through Mr. Justice Henshaw that ''the doctrine of the law of the case presupposes error in the enunciation of a principle of law applicable to the facts of a case under review by an appellate tribunal. . . . But since the rule owes its very existence to error, it is not one whose extension is looked upon with favor. The ruling is adhered to in the single case where it arises, is not carried

into other cases as a precedent, and the doctrine is rarely and in a very limited number of cases applied to matters of evidence as distinguished from rulings of law. The narrow class of cases in which the doctrine will be held to apply to evidence and the rigid limitation upon the application of the doctrine will be found well expressed in *Wallace* v. *Sisson,* 114 Cal. 42, [45 Pac. 1000]. It is there said: 'But where the fact which is to be decided depends upon the credit to be given to the witnesses whose testimony is received, or the weight to which their testimony is entitled or the inferences of fact that are to be drawn from the evidence, the sufficiency of the evidence to justify the decision must be determined by the tribunal before which it is presented and is not controlled by the opinion of the appellate court that similar evidence at a former trial of the cause was insufficient to justify a similar decision.' "

Much less can it be said here that the decision of this court on the former appeal is a controlling factor now. The question of law decided there was that there was some evidence in favor of plaintiff which rendered her contention a proper one to be submitted to the jury—not that it required a favorable finding in her behalf. Indeed, it is well settled, as stated by this court through Justice Hart in *Bush* v. *Wood,* 8 Cal. App. 647, [97 Pac. 709], that a motion for a nonsuit "is tantamount to a demurrer to the evidence, or an objection that admitting all the proved material facts to be true said facts do not in legal effect operate in favor of plaintiff"; and it is further held that the evidence, whether erroneously admitted or not, must be given its full probative force, and that no question arising as to variance or the credibility of witnesses can be considered, and furthermore that the evidence must be taken most strongly against the defendant.

From what has already been said it is apparent that the question now is whether the judgment of the trial court as to the credibility of the witnesses and the weight of the evidence and the proper conclusion to be drawn therefrom can be sustained. The questions are entirely different and independent of each other.

Appellant relies upon the case of *Horton* v. *Jack,* but it is not in point. Appellant says: "The case was first tried and the court granted a nonsuit. The appellate court (37 Pac.

652) said this was error." The statement is inaccurate. There were two defendants, R. E. Jack and the First National Bank of San Luis Obispo. The court found for the former, a nonsuit having been granted as to the bank. The action of the court as to the nonsuit was upheld, but the judgment in favor of Jack was reversed, the supreme court holding that the undisputed facts demanded as a matter of law a judgment in favor of plaintiff. The second trial was before a jury, and resulted in favor of the defendant Jack and the judgment and order denying the motion for a new trial was also reversed, the supreme court (115 Cal. 32, [46 Pac. 920]) saying: "We are, therefore, unable to perceive that the facts on the second trial differ at all from those on which our former opinion was predicated; and the propositions of law there decided are therefore decisive of the case on this appeal."

The third trial was also before a jury with the verdict in favor of Jack. He lost again upon appeal, the supreme court holding (126 Cal. 526, [58 Pac. 1053]), that "The testimony on the last trial being substantially the same as on the two former, under the previous decisions of this court in the case the lower court should have directed the jury, as requested, to bring in a verdict for the plaintiff for the amount admitted by defendant to be the value of the property converted."

The fourth trial resulted as usual and was again reversed, the supreme court (140 Cal. 584, [74 Pac. 139, 355]), holding that "a decision rendered upon a former appeal becomes the law of the case upon a subsequent appeal when the facts and evidence are the same upon both appeals with an immaterial exception."

Thus it will be seen, there was no question as to the credibility of the witnesses, no conflict as to the facts was involved but the court determined that necessarily the same legal effect must follow from the same facts.

The result of the decisions upholding the action of trial judges in setting aside verdicts is in many cases to deprive the right to a trial by jury of all significance and efficacy, but it is a part of our judicial system to permit the judge to exercise his own independent judgment as to the evidence, notwithstanding a finding by a jury. Of course, however, it is and must be assumed that the power to set aside a verdict will only be used when the judge is entirely satisfied that to

do otherwise would be a gross injustice. That wrong may sometimes be done is necessarily incident to the administration of any system through human agency, but it has been deemed wise to leave this revisory power, under the limitations suggested, to the judgment and conscience of the local tribunal having the best opportunity to determine the value of the evidence.

The order is affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 17, 1909.