[Civ. No. 14683.   Second Dist.; Div. One.   May 31, 1945.]

PAUL ABRAMS, Appellant, v. AMERICAN FIDELITY AND CASUALTY COMPANY, Respondent.

Joseph D. Taylor and Charles A. Son for Appellant.

Reginald I. Bauder for Respondent.

YORK, P. J.—Plaintiff appeals from an order by which a new trial was granted to defendant. The appeal is presented upon an engrossed bill of exceptions which purports to show all the evidence adduced at the trial. From this it appears that on December 25, 1940, appellant Abrams sustained personal injuries as a result of the alleged negligent operation of a motor vehicle by A. Visser, named as the assured in a policy of liability insurance issued by respondent insurance company. In an action to recover damages for such injuries, appellant was awarded $3,910 in a default judgment entered on April 29, 1941, against said A. Visser. The judgment remained unsatisfied and on December 4, 1941, appellant commenced the instant action against the insurance company which defended on the ground of failure on the part of the assured to comply with provisions of the policy (1) concerning notice, and (2) with respect to forwarding pleadings promptly to said insurance company, to wit:

"(A) Upon the occurrence of an accident or an alleged accident, covered under this Policy, the Assured shall give immediate written notice thereof with the most complete detailed information obtainable at the time to the Company, at its Home Office in Richmond, Virginia, or to its nearest Branch Office or to its duly authorized agent; if a claim is made on account of such an action or if any suit is brought against the Assured to enforce such a claim the Assured shall forward to the Company immediately every written communication, or information as to any verbal communication, and every process, pleading and paper relating to any claim and/or proceeding. The words "Immediate" or "Immediately" as used herein shall be construed to mean not exceeding five days. . . .

"(B) The Assured shall co-operate with the Company in securing information and evidence and the attendance of witnesses and in the settlement or defense of any suit or prosecution of any appeal. . . . The Assured shall at all times render to the Company all co-operation and assistance within his power. Failure to co-operate in any of the foregoing respects shall render this Policy null and void."

It appears that the assured, A. Visser, purchased the truck here involved from C. Fred Kerr, an insurance broker, who

wrote the policy of liability insurance covering the truck. On the day of the accident, the assured sent a postal card to Mr. Kerr on which was written: "I had an accident this morning 14 miles north of Beaver, Utah, on Hiway 91. Please inquire at the Sheriff's Office in Beaver, Utah, for all particulars. My policy No. is No. 36803. I remain as ever    A. Visser."

Mr. Visser did not return to Los Angeles until January 31, 1941, at which time he called on Mr. Kerr, who in turn reported the accident to Markel Service, Inc., Los Angeles agents for respondent insurer. Again on February 13, 1941, Mr. Kerr communicated with said service giving the name of the only witness to the accident. On March 10, 1941, Mr. Kerr indited the following letter to Mr. J. Donald Young, Markel Service, Inc., it being stipulated herein that Mr. Young was an employee of the respondent insurer: "In answer to your inquiry about the reporting of the above accident to your company, Mr. Visser sent us the attached card from Utah soon after the accident happened. The card is dated Dec. 25 and postmarked Dec. 26. You will note that the card contains no information as to the accident. Upon receipt of the card we wired the Sheriff's Office at Beaver for information but got no reply.

"We heard no more from Mr. Visser until a few days before, or shortly after our letter of Jan. 31, 1941, when Mr. Visser came back from Utah and gave us the full details of the accident, and upon receipt of this information we wrote to your company and gave them what information we had. Until Mr. Visser came back and told us we had no knowledge that any other vehicle was involved. We had supposed that he just ran off the road or upset or something like that inasmuch as he had told us nothing about any other vehicle. Consequently we did not notify Markel Service until we learned from him that another car was involved.

"We trust this is the information you want.
                                             "C. Fred Kerr
Wit:   J. D. Young                    "By R. J. Albright."

Thereafter, in May of 1941, a "Reservation of Rights Agreement" was executed by the assured and the insurer by which it was agreed that "by receiving notice of this ac-

cident and by investigating or adjusting, or attempting to investigate or adjust, or by filing any answer or other pleading in the said law suit, or taking any action whatsoever for the defense or settlement of the said claim and law suit, the insurer shall not be deemed or construed to waive the insurer's rights to disclaim coverage by reason of these and certain other breaches of the policy conditions; and the defense of the said suit or any action which the insurer may take in connection with the defense or settlement of the said suit, shall not be construed as an admission that the said American Fidelity and Casualty Company and/or Markel Service, Inc., is in any way responsible for any verdicts or judgments which may be rendered in said suit.''

At the time the last-mentioned document was executed, it was stated by Mr. Young that if Mr. Visser would sign the agreement, the insurer would reopen the case with Mr. Son, appellant's attorney. Mr. Kerr also testified that he had five or six conversations with Mr. Young, it being Mr. Young's contention that his company should have been notified of the accident sooner than it was.

Mr. Son, attorney for appellant, testified that he had a conversation with Mr. Young on February 23, 1941, at which time the latter stated that the insurance company was going to deny liability because it had not been notified of the accident until over a month after its occurrence; that on March 11th, he telephoned Mr. Young that he intended to file a suit; that on March 17th, he again telephoned Mr. Young that he had filed the suit and Mr. Young said the company would resist coverage; that on April 3, 1941, he telephoned Mr. Young and told him the defendant was in default but that if Mr. Young wanted to defend the case ''I would give him time to plead and would not enter the default and he again reiterated that they would resist coverage and liability, so we entered the default.'' Mr. Son further testified that on April 11, 1941, he called at the Markel Agency and endeavored to settle the case but ''he was informed that the case would not be defended and that they disclaimed liability; that they had not been notified for over two months after the accident and that the policy had been cancelled; that on the same day, April 11th, 1941, he told Mr. Kerr on the telephone that he was

going to enter a default and requested that the case be placed on calendar for hearing."

Mr. Visser testified that he turned over to Mr. Kerr the complaint and summons served on him; also that he received two registered letters from the insurer, one on April 28, 1941, which was some three weeks after he had been served, in which he was asked "to bring the suit papers in and sign an agreement so that the insurance company could proceed to defend the case in my behalf, without prejudicing their rights." Said witness stated he discussed this communication with Mr. Kerr who advised him not to sign such an agreement, but that he did sign the reservation of rights agreement sometime late in May or early in June, 1941.

At the conclusion of the trial on July 10, 1942, the court sitting without a jury took the cause under submission, and on October 28, 1942, after briefs had been filed by both parties, the trial judge made findings of fact accompanied by a memorandum of decision in which he found for respondent insurer on the ground that the delayed notice, which said insurer received of Mr. Visser's accident, was prejudicial to its rights, both as a matter of law and as a matter of fact.

Thereafter, appellant moved for a new trial, and in due course the trial judge in amended findings of fact and a second memorandum of decision decided that the motion should be denied, but that the judgment theretofore rendered in favor of respondent should be vacated and a new judgment entered in favor of appellant.

By said amended findings of fact, the court found that the delay in giving notice "was, under all the facts and circumstances shown by the evidence, excused"; that defendant insurer "by omitting to make objection to said assured promptly and specifically upon the ground that notice of said accident was presented to it too late, has waived said delay in the presentation of said notice under section 554 of the Insurance Code."

Thereupon, respondent made a motion for a new trial, and on May 27, 1943, an order granting said motion was entered, accompanied by a third memorandum of decision reading as follows:

"I am forced to the conclusion that a motion for a new trial should be granted.

"In my opinion the case was tried in too much of a hurry and the witnesses were put on the stand without refreshing their minds as to dormant facts. They testified honestly, in my opinion, and refreshment of such witnesses would not have caused them to stray from the truth but might have a beneficial effect in developing the truth. The evidence is in such a shape that in fairness to both parties, they should start with a clean slate and try the case without being hurried.

"The defendant's motion for a new trial is granted on the ground, among others, that the evidence does not support the judgment."

The instant appeal is prosecuted from said order.

█ "The granting of or refusal to grant a new trial rests very largely within the discretion of the trial court—a discretion which is extremely wide; and its ruling will not be dis-turbed, especially where, as here, a new trial has been granted on the insufficiency of the evidence, unless there is a clear and affirmative showing of a gross, manifest or unmistakable abuse of the discretion it is called upon to exercise. (20 Cal.Jur. pp. 27-31.) In other words, it is only in rare instances and on very strong grounds that the reviewing court will set aside an order granting a new trial. (*Morgan* v. *Los Angeles Pac. Co.*, 13 Cal.App. 12 [108 P. 725].) . . . █ If, therefore, on appeal the case shows a reasonable or fairly debatable justification for the trial court's order or the evidence presents a situation where reasonable minds might differ in their deductions, said order will not be set aside, even though the court of appellate jurisdiction might take a different view from that of the trial court (*Kramm* v. *Stockton Elec. R. R. Co.*, 10 Cal.App. 271 [101 P. 914]) ; *Springer* v. *Pacific Fruit Exchange,* 92 Cal.App. 732 [268 P. 951], or believe the evidence would be sufficient to support a judgment in the event a new trial had been denied. (*Glascock* v. *Watters,* 136 Cal. App. 713 [29 P.2d 434].) " (*Ogando* v. *Carquinez G. School Dist.,* 24 Cal.App.2d 567, 569 [75 P.2d 641]. See, also, *Fisher* v. *Zimmerman,* 23 Cal.App.2d 696, 700 [73 P.2d 1243], and authorities there cited; *Shortt* v. *Los Angeles G. & E. Corp.,* 80 Cal.App.2d 511 [86 P.2d 854].)

█ The principal questions presented to the trial court for decision were: (1) Did the failure of assured to give

notice of the accident to the insurer until forty-one days after the accident absolve the insurer of liability under the policy? (2) Did the insurer by its actions subsequent to such period of time waive compliance with the provisions of the policy that timely notice must be given? These were questions of fact, and an examination of the bill of exceptions herein discloses that the evidence adduced at the trial was sketchy and inconclusive. Also, as stated by the trial judge in his memorandum of decision, "the case was tried in too much of a hurry. . . . The evidence is in such a shape that in fairness to both parties, they should start with a clean slate and try the case without being hurried."

In view of the expressed feeling of the trial court and the wide discretion vested in him, there was no abuse of such discretion in the granting of a new trial.

For the reasons stated, the order appealed from is affirmed.

Doran, J., and White, J., concurred.