[Civ. No. 21861. Second Dist., Div. Two. Apr. 18, 1957.]

HARILEE TOWNSEND, JR., Appellant, v. THOMAS GONZALEZ et al., Respondents.

Moore, Trinkaus & Currer and Henry T. Moore for Appellant.

Lee A. Solomon, Bonhomme M. Cahn and Warner, Peracca & Cowan for Respondents.

MOORE, P. J.—Defendant Gonzalez had been operating under the fictitious name of Gonzalez and Blanco when he entered upon a joint venture with defendant East India Trading Company, Inc., for the purchase of beans from appellant. The complaint alleged that on November 3, 1952, respondents contracted to purchase from appellant a cargo of pinto beans as follows: 31,000 one-hundred pound bags at $9.10 per bag for Number 1 grade beans; $8.85 per bag for Number 2 grade beans; $8.60 per bag for Number 3 grade beans. Respondents accepted from appellant beans as follows: 1,971,916 pounds of Number 1 grade beans; 639,175 pounds of Number 2 grade beans, and 170,923 pounds of Number 3 grade. Also, it alleged that respondents paid for all the Number 1 grade beans, but did not pay for 2,303 pounds of Number 2 grade beans or for 78,360 pounds of Number 3 grade beans, leaving a balance due appellant of $6,942.78.

Both respondents denied that any sum was unpaid to appellant and the East India Trading Company denied the joint venture. Upon such pleadings the action was tried. The court found the contract as alleged; that respondents were joint adventurers; that they had not paid for 2,303 pounds of Number 2 grade beans, or for 78,360 pounds of Number 3 grade beans which they had received from appellant, and that respondents were indebted to appellant in the sum of $6,942.78 for beans not paid for and judgment was entered for that sum.

Respondents filed their notice of intention to move for a new trial and specified three grounds, to wit: (1) insufficiency of the evidence to justify the judgment; (2) errors at law occurring at the trial and excepted to by the moving parties, and (3) that the judgment is against the law.

The minute order granting the motion for a new trial was made January 31, 1956, as follows:

"Defendants' Gonzalez and East India Trading Company, motion for a new trial submitted this date; the Court now makes its order. Each Defendant's motion is granted."

This is the order appealed from.

Since insufficiency of the evidence to support the judgment was not specified in the order granting the new trial, we must assume it was not granted upon that ground. (*Malloy* v. *Fong*, 37 Cal.2d 356, 376 [232 P.2d 241]; Code Civ. Proc., § 657.) Therefore, in order for appellant to sustain the burden of reversing the order granting a new trial and of reinstating the original judgment, he must convince this court that there was no prejudicial error at the trial or that none was specified at the hearing of the motion for a new trial, and that the judgment was not against the law. It is only in rare instances and on very strong grounds that a reviewing court will set aside an order granting a new trial. (*Morgan* v. *Los Angeles Pac. Co.*, 13 Cal.App. 12 [108 P. 735]; *Abrams* v. *American Fid. & Cas. Co.*, 69 Cal.App.2d 426, 431 [159 P.2d 62].) The orthodox statement of the rule is: Whether a new trial will be granted rests largely in the discretion of a trial court; its order will not be disturbed except upon a manifest and unmistakable abuse of such discretion. (4 Cal.Jur.2d 476, § 598.) Because the granting of a new trial does not finally dispose of a controversy, seldom will an appellate court reverse an order granting a new trial where there is a fairly debatable justification in law. (*Cf. Sloboden* v. *Time Oil Co.*, 131 Cal. App.2d 557 [281 P.2d 85].) Where the order granting a new trial is not grounded on the insufficiency of the evidence, it is the duty of the reviewing court to consider the entire record on which the order was based to discover whether there was any error which would have justified the trial court in making the order. (*Greenman* v. *Rogers*, 122 Cal. App.2d 55, 56 [264 P.2d 92]; *Renfer* v. *Skaggs*, 96 Cal. App.2d 380, 385 [215 P.2d 487].) Where, as here, the order fails to specify the ground upon which it was granted, it will not be disturbed on appeal if any one of the grounds specified in the notice of intention, with the exception of insufficiency of the evidence, is sufficient to sustain the order. (*Tasker* v. *Cochrane*, 94 Cal.App. 361, 363 [271 P. 503]; *Lucerne Country Club* v. *Beal*, 21 Cal.App.2d 121, 124 [68 P.2d 408].) But since the power of a court is not unlimited, if upon full consideration of the record it is shown that the trial court erred in the application of the law to the facts in issue, its action will be corrected. (*Vertson* v. *City of Los Angeles*, 116 Cal.App. 114, 126 [2 P.2d 411].)

The agreement of purchase originated in a telephone conversation between the parties, but its terms were confirmed

in a telegram dated November 3, 1952 (Exhibit 17),[1] from Gonzalez to Townsend. It will be noted the telegram provided *"most recent warehouse receipts weights and grades to govern."* (Emphasis added.) It was from this clause and its proper interpretation that arose most of the controversy over the admissibility of plaintiff's Exhibits 3[2] and 4[3], by reason of the fact that these exhibits contained evidence of only "railroad weights" and not warehouse receipts.

An application for commercial letter of credit from the International Branch of the Bank of America in Los Angeles was made by respondent East India Trading Company, Inc., through its president, Moosa H. Rawjee. Pursuant to this application, on November 12, 1952, the Bank of America issued its irrevocable letter of credit to Townsend Supply Company, payable through the El Paso National Bank in the total amount of $252,889 with expiration date of November 29, 1952. Under the title "Documents Required" the letter called for, in part: "2. Copies of most recent Authentic PMA Warehouse Receipts for each lot. 3. Railroad Weight Certificates in quadruplicate." Under "Special Instructions" it stated: "PMA WAREHOUSE AUTHENTIC COPIES OF MOST RECENT GRADES AND WEIGHTS TO GOVERN AND MUST BE SUBSTANTIATED BY WAREHOUSE RECEIPT COPIES. . . . If

---

[1] "TOWNSEND SUPPLY COMPANY
c/o H. E. WILSON & Co
1815 Magoffin Street
El Paso, Texas.

We are airmailing special delivery today to Mr. Moreno El Paso National Bank twentyfive thousand dollars to be held as advance against our purchase of 28,000 bags pinto beans as per your telegram October 31st also additional 3,000 bags purchased by phone same price stop bankers irrevocable letter credit will be established for total less advance for approximately 31,000 bags at $9.10 per one hundred net pounds basis fob El Paso for USones quality less discount twentyfive cents UStwos and fifty cents USthrees all other terms identical to your purchase from Production Marketing Administration Dallas Texas also most recent warehouse receipts weights and grades to govern.

GONZALEZ AND BLANCO"

[2] Plaintiff's Exhibit 3 consisted of 29 sets of documents covering twenty-nine cars containing 27,420 bags of beans. Each set contained a freight bill with the car number, a railroad scale ticket with the net weight, a shipping order signed by Jack C. Shoen, agent for respondents and appellant's invoice. None of the sets contained either PMA or Townsend warehouse receipts covering grades and weights.

[3] Plaintiff's Exhibit 4 was a set of similar documents covering the disputed 30th car (AT-32317) containing 800 bags of beans. No warehouse receipts showing weights and grades are included. It was for the beans in this car that appellant claims he was not paid.

copies of Authentic PMA W. R. are not available immediately, payment may be paid [sic] against Railroad weight certificate and on basis of grade subject to adjustment as follows: 19,000 bags of US #1 quality, 7,000 bags of US #2 quality and 2,000 bags of US #3 quality until such time as copies of authentic warehouse receipts are presented. Townsend Warehouse Receipts are acceptable (copies), in lieu of PMA Authentic Warehouse Receipts.'' On its reverse side the exhibit shows a withdrawal on November 17, 1952, of $96,460 and on November 24 of $147,307.95, leaving a balance of $9,121.05. At the bottom of the sheet, in ink, are the following notations:

''#1 Pinto Beans

| 10600 bags | 1,061,680 #[4] no 1 |
|---|---|
| 9294 bags | 910,256 # no 1 |
| 6574 bags | 636,872 # no 2 |
| 1752 bags | 92,563 # no 3 |

28,220''

It is significant that the 28,220 bags listed on the Letter of Credit is the same as the aggregate number of bags listed in plaintiff's Exhibits 3 and 4 combined. Also, the weights listed total 2,701,371 pounds, which is the quantity of beans both parties agree was paid for.

Plaintiff's Exhibits 12 and 13 are copies of ''Advice of Negotiation'' sent by the Bank of America to East India Trading Company, Inc., with copies to Gonzalez & Blanco, and dated November 17, 1952, and November 24, respectively. Exhibit 12 covers 11 cars and shows the car numbers, the quantity of beans and the amount of the draft, in payment of the beans, to wit, $96,460. On both 12 and 13 there is a notation that PMA warehouse receipts are included in the accompanying documents. Exhibit 13 is similar, covers the last 19 cars and is in the amount of $147,307.95. In listing the car numbers, Exhibit 13 includes disputed car AT-32317.

But the significance of Exhibit 13 with respect to appellant's claim against respondents appears in the following listing of Number 3 beans:

''92,563 #3 Pinto Beans[5]
80,600''

---

[4]The symbol '' # '' is used in this column to mean pounds.

[5]The quotation is an exact copy of exhibit number 13 and the symbol '' # '' means ''pounds of No.'' 3 Pinto Beans.

In short, in listing the quantity of beans used in computing the money due appellant on the reverse side of the letter of credit, as quoted, *supra*, the item of 80,600 pounds of Number 3 beans *was not included*. This was the quantity of beans contained in car AT-32317. It therefore appears from the undisputed documentary evidence that car AT-32317 had been delivered prior to November 24, 1952, and that in computing the amount of the draft in payment of the beans covered by Exhibit 13, the bank omitted the contents of car AT-32317. It follows that the uncontradicted documentary evidence shows on its face that respondents failed to pay appellant for the beans in car AT-32317 and that the trial court's original findings were correct.

In view of the involved facts, it will be of advantage to repeat some of the factual statements above. Extensive briefs have been filed whereby the asserted errors of the court in overruling a certain objection have been discussed generously. ▮ There is no merit in such objection for the reason that it did not direct the court's attention to the point aimed at by the objector.

It will be recalled that respondents insisted that the railroad weights were not admissible because the contract and letter of credit required the production of warehouse receipts showing the weights and grades. They objected to the introduction of Exhibits 2 and 3 on the grounds that they were incompetent, irrelevant and immaterial. Exhibit 2 consists of 29 sets of documents covering 29 cars and Exhibit 3 is a set of similar documents containing a description of the contents of car AT-32317. But Exhibits 12 and 13 contained all the car numbers, weights of beans and a list of all other documents required to make payment under the letter of credit. But such documents, at the time of the trial, had been returned to "the beneficiary" as it appeared on Exhibit 13. The objection was general. It did not specify that it was not the best evidence. The court overruled it and properly acted upon the evidence received and rendered judgment accordingly. The objection was without merit, but if it had been meritorious without considering Exhibits 2 and 3, it appears from Exhibits 7, 12 and 13 that respondents actually received the full 30 cars of beans and that the El Paso Bank had in its possession all the required warehouse receipts and other documents before it made payment. In computing a final payment for the last 19 cars, it failed to include the beans in disputed car AT-32317.

It remains to determine whether there was any error sufficient to justify the granting of a new trial or whether the judgment was against the law.

Taking the points in their inverse order, it is observed that the judgment is not against any law. The findings followed every allegation of the complaint and traversed every denial of the answer. Substantial evidence established each of such findings. The judgment necessarily followed the findings and the conclusions derived from them. No evidence was presented by respondents other than Exhibits A, B, and C. The proof is clear that respondents received 80,600[6] pounds of beans for which no payment was made. There is no escape from the conclusion that the judgment necessarily followed the facts legally proved. Not a word appears in the argument of respondents to indicate that a different judgment might, would, or could follow another trial.

Now, if there was an error at the trial, it was waived by respondents for the reason that it was not pointed out to the trial court when the motion for a new trial was argued. It is the duty of the party seeking a new trial to make clear to the trial court the errors claimed. In such event the record on appeal would contain the particular errors assigned as justifying the granting of the motion and the affirmance of the order. (*Phillips* v. *Wheeler*, 55 Cal.App. 236, 238 [156 P. 469].) Herein, no particular error was specified to the trial court.

Unfortunately for respondents, the only objections they made at the trial related to the admissibility of evidence offered by appellant. In the main, such objections were general, based upon the grounds that the evidence was "incompetent, irrelevant and immaterial." Such grounds do not always point out the vice of proposed evidence. Proof is admissible if it affords a reasonable inference as to the principal fact in dispute. (*Dike* v. *Golden State Co.*, 125 Cal.App.2d 6, 11 [269 P.2d 619]; *Craven* v. *Central Pac. R. Co.*, 72 Cal. 345, 350 [13 P. 878].) Under a "general objection," if the evidence offered is admissible for any purpose, it is proper for the court to overrule the objection and hear the evidence. (*Hawkinson* v. *Oesdean*, 61 Cal.App.2d 712, 719 [143 P.2d 967].) Moreover, irrelevant evidence is not a ground for a new trial in the absence of a

---

[6]The briefs and the findings refer to 80,663 pounds but exhibit 13 specifies 80,600 pounds of Pinto beans.

showing that the movant for a new trial was prejudiced by the evidence. (*Hansen* v. *Martin,* 54 Cal. 394, 395.)

Respondents objected to certain bills of lading, warehouse notices and receipts and other papers relating to the various cars of beans loaded by respondents' agent Schoen who shipped them on behalf of respondents. Gonzalez made the general objection while the trading company interposed the objection of hearsay on the theory that there was no joint venture. Those papers were received subject to a motion to strike if not properly connected. After the witness had identified the documents as to various cars of beans, respondents objected to the witness' testimony as to whether they related to a certain designated car on the ground it called for a conclusion. His testimony was properly received because he knew the fact from his own knowledge; he could tell this from the bill of lading for each car shipped. The same objections were made to the offer of documents relating to the disputed car, AT-32317. They were received in evidence after witness Schoen had identified his signature on the bills of lading attached to each set of documents relating to such car. There was no hearsay on the part of the witness Schoen because he had personal knowledge of the amount of beans shipped under the contract of the parties. The questions did not call for conclusions, but for facts he knew. Where the facts from which a conclusion is drawn are given and the conclusion is proper, there is no error warranting the granting of a new trial. (*Davenport* v. *Stratton,* 24 Cal.2d 232, 240 [149 P.2d 4].) It was proved beyond question that 80,600 pounds of beans were not paid for. The judgment correctly authorized recovery for their value. It was established that 30 carloads were delivered to respondents. The warehouse receipts and bills of lading relating to 29 carloads were admitted as Exhibit 3 subject to a motion to strike; but such motion was never made. The letter from appellant's El Paso bank attached to such receipts and bills of lading were received as Exhibits 8, 9 and 10. By those documents it was established that 29 carloads of beans were covered and that those cars contained 2,701,371 pounds of beans, the exact amount for which respondents paid appellant. That amount is all for which they claim to have paid. In view of the fact that 29 cars contained 2,701,371 pounds and that such poundage is all that respondents paid for, what more should be required to show that the beans in the 30th car were not paid for?

Moreover, the shipping book of respondents' agent (Schoen) proves that only two cars had Number 3 beans, to wit: AT-212729 which contained 952 bags of Number 3 weighing 92563 pounds and AT-32317 which contained 800 bags of Number 3 beans weighing 80,600 pounds. Inasmuch as Exhibits 7, 11 and B show that only 92,563 pounds of Number 3 beans were paid for by respondents and that such was the exact quantity of grade Number 3 in car AT-212729, it follows that no money was ever paid for Number 3 beans in car AT-32317, which were 800 bags weighing 80,600 pounds.

Furthermore, the record demonstrates that respondents should have known that they had not paid for the beans they had contracted to buy. Their letter of credit was for $252,889 but of that sum, $9,121.05 was not used before it expired on November 29, 1952. They paid $96,460 at one time and $147,307.95 at another. These aggregated $243,-767.95. These payments were based upon billings from appellant (Exhibits 8, 9, 10 and 11 and B) covering 2,701,371 pounds of beans. If respondents had followed the usual good business practice of checking the quantity and grades of beans listed on Exhibit 13 against the amount of the draft listed on the same exhibit, they would have known they had received 80,600 pounds of Number 3 beans not included in the amount of the payment.

Objections were made to questions propounded to the witness Schoen (1) as to the number of sacks in the various cars and (2) as to the identity of the shipping record he had made as respondents' agent. The witness was testifying from his own knowledge. He had made the record when he shipped the beans and in it set out the number of sacks of beans in each car. This evidence was material in establishing the quantity of beans received and in identifying the cars in which the beans were shipped.

Questions were propounded to respondent Gonzalez with respect to his joint venture with East India Trading Company. The court overruled objections to those questions made on the ground that the questions were immaterial. The ruling was correct. The joint venture was a vital factor. It was proper to ascertain the fact of sharing profits and losses by the parties. In order to determine the ultimate fact as to whether there was a joint venture it was necessary to consider all the attending circumstances. (Corp. Code, § 15006.7; *Constans* v. *Ross*, 106 Cal.App.2d 381, 386 [235 P.2d 113].)

Many general objections were made to the questions addressed to Mrs. Caballero; also, "hearsay" objections were made to inquiries with reference to East India Trading Company. Her answer was that she knew the matters of her own knowledge. She had made the billings concerning which inquiry was made for appellant about the time the billings were forwarded to respondents. There were three billings, the third accompanied the draft for payment of beans in the 30th car.

Inasmuch as she had made the billings, why should not Mrs. Caballero have explained her own work and how the billings were computed from the records and from the particular cars and beans to which the billings related? Who could deny that it was proper for her to testify that appellant had paid the Commodity Credit Corporaton for the beans in the 30th car subsequent to the prior billings. Such evidence all related to the question whether respondents had paid for all the beans delivered to them and as to why the billing on the 30th car was submitted after the expiration date of the letter of credit and not included in the two prior billings made under the letter of credit. The testimony of Mrs. Caballero was concerning facts within her own knowledge and it was relevant to the issues raised by the pleadings. It is established that the facts upon which she based her statements were fully related to and in most cases were supported by documentary evidence. Its admission was not error.

From the facts established by the evidence and upon a consideration of the testimony to which objection was made, it is inconceivable that its exclusion would have resulted in a different judgment.

Order reversed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied May 14, 1957, and respondents' petition for a hearing by the Supreme Court was denied June 12, 1957.