[Civ. No. 11620.   First Dist., Div. Two.—June 20, 1941.]

ARTHUR DOYLE et al., Respondents, v. KENNETH LOYD et al., Appellants.

Garth V. Lacey for Appellants.

Phillip Barnett, Samuel Vartan and Anthony Brazil for Respondents.

STURTEVANT, J.—On August 10, 1939, a truck being operated by defendant Kenneth Loyd collided with an automobile being operated by Joaquin Rodriquez. The latter commenced action No. 19,622 to recover damages. Others riding in the automobile with him commenced action No. 19,623 to recover damages. The numbers indicate the records of Monterey County. The actions were tried together. In the first action the trial court made findings in favor of the defendants. The plaintiff has not appealed. In the other action the trial court made findings in favor of the plaintiffs and the defendants have appealed.

Highway 101 leads from San Francisco south to Los Angeles. A short distance north of Salinas the Southern Pacific Railroad right-of-way extends practically at right angles across the right-of-way of the highway. The highway crosses the railroad property by an underpass. That underpass is so constructed as to form the letter "Y". The stem extends to the north and the arms respectively to the southwest and southeast. The southeast arm is known as Monterey Street. The southwest arm is known as Main Street. The sides of the excavation are concrete walls. At the time of the accident Rodriquez was driving his automobile, a Chevrolet, toward the north. The plaintiffs Arthur Doyle, Virginia De Sosa, Ana De Sosa, and Mary Escobar, were riding with him in the automobile. Kenneth Loyd, as the agent of the defendant Marty Sherman, was driving a truck in a southerly direction toward Los Angeles. The accident happened at the intersection in the underpass below the railroad trestle. There were stop signs at the intersection of Main Street and Highway 101. On the pavement between the stop signs there was written "Stop". The accident happened at about 6:20 p. m.

The Dugger family were proceeding in their automobile on North Main Street behind defendant. They testified that he was operating the truck in the right-hand lane and that he entered the underpass at an approximate speed of 20 miles per hour. Defendant's testimony regarding his course and

speed was in accord. The accident report made out by Officer Adcock stated that defendant's speed at the time of the accident was 20 miles per hour. Mr. Freer, who was driving on Main Street behind plaintiffs' automobile, testified that defendant's speed was ''around 35 miles per hour''. Defendant testified that as he started into the underpass he held the arm signal strap down with one hand because it was not equipped with a ratchet. The highway at this intersection is constructed so that a turn left into Monterey Street should be commenced at a point before reaching the overhanging bridge of the underpass. The testimony was to the effect that the Chevrolet in which plaintiffs were riding crossed over the stop sign painted on Main Street and proceeded into the intersection at a slow speed without stopping. The witnesses stated that when defendant was under the bridge he applied his brakes and turned the truck sharply to the left out of the right-hand lane. Defendant's story was that he saw the Chevrolet proceed into the highway without making a stop and that he immediately applied his air brakes and tractor brakes and cut to the left to avoid a collision with the automobile. Plaintiffs' theory of the accident was that defendant reached a point under the overhang, realized that he had proceeded too far to make a proper left turn into Monterey Street, and made a sudden turn to the left causing the collision with the Chevrolet. The accident occurred near the center line of Highway 101, the truck pushing the automobile over the curb and into the concrete wall of the underpass. Mr. Freer testified that the impact was such that three of the passengers were thrown out of the Chevrolet. Police officers and an engineer stated that the truck's skid marks started from a point in the right lane underneath the overhang and swung across the highway to the left side of the road; the marks were over 100 feet in length, were very pronounced, and contained several breaks. After the accident defendant told one of the officers that it was the first time he had driven the truck along the southerly route and that he did not know just where the turn was located.

The defendants contend that the preponderance of the evidence was to the effect that the truck was traveling 20 to 25 miles per hour at the time of the collision and that the

trial court's finding that it was traveling in excess of 35 miles per hour is not sustained by the evidence. We find no merit in that contention. It is true there was some evidence to the effect the truck was traveling 20 to 25 miles per hour but there was substantial evidence that it was traveling much faster. One witness testified that it was traveling 35 miles per hour. The skid marks and other physical facts strongly tend to corroborate the testimony of the witness last mentioned.

The defendants also contend that Kenneth Loyd was driving in the most westerly and outer lane of Highway 101 and was making proper use of said highway at said time under all existing conditions. It was not contended by the plaintiffs that the truck was not driven on the right-hand side of the highway before it reached the underpass. However, as shown above it was the contention of the plaintiffs, and the record sustains their contention, that Loyd was not familiar with the road, that immediately before he reached the underpass he did not commence to make the turn into Monterey Street but delayed until it was necessary for him to make what one witness designated a "hard turn" to the left. The uncontradicted facts were that the signal arm attached to the truck could be operated only by pulling a strap. To pull that strap was impossible at the very instant Loyd was making the left turn. At that very instant it was particularly necessary that the signal should have been in use and indicating to Rodriquez that the truck was about to pass immediately in front of him. For each of these reasons it may not be said that Loyd was making proper use of said highway at the time of the collision.

The plaintiffs next contend that Loyd had no reason to believe Rodriquez would violate the boulevard stop sign and unlawfully proceed into Highway 101 without first stopping. As we have pointed out above there was evidence that the defendant Loyd was not exercising due care as he approached the entrance to Monterey Street. Under those circumstances he was not entitled to assume that Rodriquez would exercise due care.

At the time the trial of said actions commenced the trial court was not advised as to the ages of Ana De Sosa and Mary Escobar. Later it transpired that they were minors. Thereupon the trial court caused such proceedings

to be had that a guardian *ad litem* was appointed for each of said minors. Thereafter said guardians promptly appeared and have since continued to act for said minors. After it transpired that two of the plaintiffs were minors the defendants made a motion that the causes of action of the two minors be stricken from the pleadings. That motion was denied and the court's ruling is assigned as error. It is sufficient to state that we find no error in the ruling. The statutes regarding the appointment of guardians *ad litem* were enacted for the purpose of protecting the minors and not for the purpose of precluding them from their legal rights. The defendants cite no case that holds to the contrary.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.