[L. A. No. 21573. In Bank. Dec. 27, 1950.]

CAROL L. PORTER et al., Respondents, v. BAKERSFIELD & KERN ELECTRIC RAILWAY COMPANY et al., Appellants.

MARVIN WILLIAM SHREFFLER et al., Respondents, v. BAKERSFIELD & KERN ELECTRIC RAILWAY COMPANY et al., Appellants.

Johnston, Baker & Palmer and Borton, Petrini & Conron for Appellants.

Calvin H. Conron, Jr., for Respondents.

SCHAUER, J.—Defendants appeal from judgments rendered against them on jury verdicts awarding damages for injuries received by two school children who were struck by a city passenger bus shortly after alighting from a school bus. A hearing was granted by this court, after decision by the District Court of Appeal, Fourth Appellate District, for the purpose of giving further study to the problems presented.

After such study we have concluded that the opinion of the District Court of Appeal, prepared by Mr. Presiding Justice Barnard, correctly treats and disposes of the issues involved, and it is therefore, with certain further discussion, adopted as and for the opinion of this court. Such opinion (with appropriate deletions of introductory and conjunctive matter, and pertinent additions, all as indicated) is as follows:

"[ ] The accident occurred about 3 p.m. on December 1, 1947, at the intersection of Woodrow and Yosemite Streets, in a residential district adjoining Bakersfield. The day was clear and the streets were dry. The two minor plaintiffs were being returned to the vicinity of their homes by the school bus which, traveling west on Woodrow, made its regular stop on the northeast corner of this intersection. Some 12 or 15 children, including the minor plaintiffs, got off the bus which remained stopped for several minutes. The children had been instructed not to cross the street until a whistle was blown by the driver.

"While this group of children stood near the front of the bus, and possibly while some of them were still leaving it, the minor plaintiffs, who were both 8 years old, started to run in front of the school bus and in a southerly direction across Woodrow Street. They were the only two of this group who lived to the south of Woodrow. About that time the city bus, which was also proceeding west on Woodrow, passed the standing school bus and collided with the minor plaintiffs, causing the injuries in question. The driver of the city bus first saw the children when they were approximately 6 to 10 feet from his bus and came to a stop some 25 or 30 feet after applying his brakes. The evidence is conflicting as to the speed at which the city bus was traveling and as to whether these children started across the street before or after the driver of the school bus blew his whistle.

"In each of these actions the city bus company and the driver of its bus, and the school district and its bus driver, were joined as defendants and the actions were consolidated for trial. In each action, the jury returned a verdict in favor of the plaintiffs and against all defendants. Separate judgments were entered from which all defendants have appealed upon the same transcripts.

"On the appeal of the city bus company and its driver it is first contended that the sole cause of the accident was the carelessness of the school bus driver; that there was no evidence of undue speed or of other negligence on the part of

the driver of the city bus; that this driver was confronted with an emergency caused by the driver of the school bus; and that the resulting conditions were such that a reasonably prudent driver could not have avoided the accident. It is argued that the driver of the school bus, without observing traffic conditions, blew his whistle and caused the children to run in front of the school bus and into the path of the city bus; that it was impossible for the driver of the city bus to see the children until they had passed the front of the school bus; and that he could not stop in time to avoid the accident. It is further argued that although several witnesses testified that the city bus was traveling at a speed of 20, 25 and 30 miles an hour, respectively, this evidence is conclusively disproved by the physical fact that it stopped before it had completely crossed the intersection, and that the collision would have occurred regardless of any speed at which that bus had been going.

"Not only is the evidence conflicting as to whether or not the driver of the school bus blew his whistle before the children started to cross the street, but a conflict appears with respect to negligence on the part of the driver of the city bus. He testified that he observed the school bus standing at this corner when he was about 150 feet to its rear; that he recognized it as a school bus and knew that small children would be leaving it; and that as he approached the intersection he did not see any children around it. However, several passengers on that bus testified that as they approached this intersection the driver was looking back and talking to a young lady about a new car he had bought, and that he looked forward just before he put on his brakes. While he testified that his speed was 10 miles per hour when he observed the children, there is evidence showing that this bus traveled at least 36 feet from that point although the statutory stopping distance is 9.3 feet at 10 miles per hour. Moreover, his view to the north was obstructed and other witnesses testified that the speed of that bus was from 20 to 30 miles per hour. The entire question was one of fact, and the evidence is sufficient to sustain the implied finding of negligence on the part of this driver.

"It is further contended that the city bus driver had a right to believe that the driver of the school bus would comply with the safety regulations governing him and would not 'compel' the pupils to run around the school bus and into the

pathway of the city bus. He was not entitled to rely on this presumption unless he himself were free from negligence. (*Doyle* v. *Loyd* (1941), 45 Cal.App.2d 493 [114 P.2d 398]; *Fietz* v. *Hubbard* (1943), 59 Cal.App.2d 124 [138 P.2d 315].)

 ''On the appeal of the school district and its bus driver it is first contended that the accident was caused solely by the negligence of the driver of the city bus, and that any negligence of the driver of the school bus could not have contributed to the accident since it would have occurred regardless of what he did. It is argued that these children ran into the street before the driver of the school bus blew his whistle; that when he saw them they were almost even with the left side of the school bus, and it was too late for him to have prevented the accident; that in his excitement he then blew his whistle to warn the children of their danger; and that his valiant effort to prevent the accident could not be considered as having caused it.

''The school bus driver testified that as he pulled up and stopped he looked both ways and saw no traffic at all on the street; that he did not look again; that his rearview mirror was one which would have enabled him to see for some 300 feet to the rear; and that he first saw the city bus when it was opposite him and about 5 or 6 feet from the two children. He further testified that when he saw the children they were about even with the left side of his bus and the city bus about 6 or 8 feet from them; and that he blew his whistle 'in the excitement of trying to prevent the accident' and for the purpose of 'trying to attract the attention of the kids.' Not only was there evidence, by three witnesses, that this driver blew his whistle before the two children started to cross the street, but he admitted that after looking as he approached for a stop he did not again look for traffic, although he was stopped for several minutes, and that he did not see the city bus until it was almost past his own bus. Aside from the main conflict in the evidence in this regard, and assuming that this bus driver did not blow his whistle before the children started to cross the street, it could hardly be held, as a matter of law, that he exercised ordinary care under the circumstances, to say nothing of the special care required of such a bus driver. The question was one of fact and the evidence, with the reasonable inferences therefrom, is sufficient to support a finding of negligence on the part of the driver of the school bus.

 ''It is next contended that the court committed re-

versible error by giving one instruction relating to a rule of the State Board of Education, as then in effect. The portion of this instruction which is material here reads as follows:

" 'Whenever a school bus stops at a point . . . to discharge pupils who must cross the street or highway in order to reach their destination, . . . the driver of the bus shall not permit the pupils to cross the street or highway until they may safely do so, and shall, if necessary, escort such passengers across the street or highway.

" 'A violation of the foregoing rule is negligence as a matter of law.'

"It is argued that the jury was thus instructed that a violation of this rule is negligence as a matter of law, without being further instructed that the surrounding circumstances must also be considered to determine whether or not it was excused or justified, and without being told that the violation must be a proximate cause of the injuries received; that this instruction took from the jury the entire question as to whether this driver's violation of the rule, by blowing his whistle as a warning after the emergency existed, might be excused or justified under the circumstances; and that its prejudicial nature clearly appears from the rules set forth in *Satterlee* v. *Orange Glen School Dist.* (1947), 29 Cal.2d 581 [177 P.2d 279], and followed in *Combs* v. *Los Angeles Railway Corp.* (1947), 29 Cal.2d 606 [177 P.2d 293].

"In the Satterlee case, the court considered an offered instruction telling the jury that the violation of a certain statute was negligence, and that its verdict must be for the defendant if it found that the plaintiff had violated it and that such act proximately contributed in the slightest degree to the accident. The court pointed out that 'An act or failure to act below the statutory standard is negligence *per se,* or negligence as a matter of law'; that in applying this rule each violation of this kind must be considered in connection with the surrounding circumstances; that in an emergency or unusual condition circumstances may be shown to excuse the violation; and that ordinarily the excuse relied on presents a question of fact for the jury. It was then held that the refused instruction did not afford the jury an opportunity to pass upon the question as to whether the circumstances were sufficient to excuse or justify that violation. This was true in that case because the offered instruction directed a verdict if it was

found that a violation occurred which contributed at all to the accident.

"While the instruction here in question stated that a violation of the rule given is negligence as a matter of law, it did not purport to cover proximate cause or other elements, and did not direct or suggest any verdict. It was one of a large number of instructions in which many other matters, including proximate cause and negligence, were fully covered. In the second instruction given the jury was told not to single out any single instruction and ignore the others, but to consider all the instructions as a whole and to regard each in the light of all the others. In another, the jury was told that, 'In deciding whether there was negligence in a given case, the conduct in question must be considered in the light of all the surrounding circumstances, as shown by the evidence' and that 'An act negligent under one set of conditions might not be so under another.' In another, 'In determining whether negligence, or proximate cause—has been proved—you should consider all the evidence bearing either way upon the question, regardless of who produced it.'

"In another instruction the jury was told that a person suddenly confronted with imminent danger to himself or to others is not required to use the same judgment or prudence that would be required in calmer moments, that his duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation, and that this is all that the law requires of him. In another, the basic speed law was given in the language of section 510 of the Vehicle Code, although that section was not mentioned. The next instruction stated that conduct in violation of the section of the Vehicle Code 'just read to you' constitutes negligence *per se*. It then stated that this means that such conduct creates a presumption that the person so doing was negligent, that this presumption is not conclusive, and that it may be overcome by other evidence showing that under all the circumstances such conduct was excusable and was such as might reasonably be expected from a person of ordinary prudence. This instruction was followed by one on speed at an obstructed intersection, by one on unavoidable accidents, and then by the instruction here attacked. Thereafter, 15 other instructions were given.[1]

---

[1]In addition to instructions already mentioned, the following appear in the jury charges:

"Should the plaintiff succeed in proving negligence which was a proximate cause of the injury on the part of one defendant only, then I

"Under these circumstances, we are unable to hold that the instruction in question could have had the effect of taking from the jury the consideration of the question as to whether or not any violation of this rule by the driver of the school bus was excusable or justified, or that it was prejudicial. While the jury had a right to consider that element it was left to other instructions, and the criticized instruction did not purport to cover all of the elements necessary to a recovery. Other elements were fully covered in other instructions, including the rules and requirements in cases of sudden peril or imminent danger, and the rule that while a violation of a statute constitutes negligence *per se* this is merely presumptive and not conclusive, and may be overcome by other evidence showing that under all the circumstances such a violation was excusable. At the outset the jury was told not to rely on any one instruction and ignore the others, but to consider them as a whole and to regard each in the light of all the others. It rather clearly appears that both of these bus drivers were negligent. All of the issues were submitted to the jury

instruct you that as to the other defendant, the plaintiff has failed in his burden of proof and that said defendant is entitled to your verdict . . .

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies . . .

". . . If you find that any party to this action was, or all were, negligent, you will follow the court's instructions in determining whether or not liability should attach, and do so without regard to how you might grade or compare the negligence involved, if permitted so to do . . .

"In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from it . . .

"If, adhering to the court's instructions, you should find that any party to this action is entitled to a verdict against the other party, it then will be your duty to award the party so entitled such amount of damages as will compensate him and her reasonably for all detriment suffered by him and her and of which the other party's negligence, as found by you, was a proximate cause—whether such detriment could have been anticipated or not.

"Should your decision be to award such party damages, in the arriving at the amount of the award, you shall determine the items of claimed detriment which I now am about to mention, provided that you find it to have been suffered by him or her, and as a proximate result of the other party's negligence."

and were substantially covered by the instructions given, and it cannot reasonably be believed that such error as appears in the instruction complained of could have affected the result.

■ "It is finally contended that the judgments against the driver of the school bus must be reversed since no claim was served upon him prior to the filing of these actions, and within the time limited by section 1981 of the Government Code. The accident happened on December 1, 1947. Each plaintiff filed a claim with the secretary of the school district on February 16, 1948. While these claims were not then served on the school bus driver, copies thereof were attached as exhibits to the complaints in these actions and were served on him within 90 days after the accident occurred.

"The cases of *Artukovich* v. *Astendorf* (1942), 21 Cal.2d 329 [131 P.2d 831] and *Redlands etc. Sch. Dist.* v. *Superior Court* (1942), 20 Cal.2d 348 [125 P.2d 490], are cited in support of the contention that the failure to file such a claim before bringing suit is fatal to the cause of action. The first of these cases involved a section of the Political Code which required the presentation of a claim to the board of supervisors before any action could be brought. The other case, involving a section of the School Code, contains nothing which is controlling here. While section 1981 of the Government Code requires the presentation of a claim to the employee whose negligence is in question within 90 days after the accident, it contains no requirement that this shall be done before the action is commenced. (See *Ansell* v. *City of San Diego* (1950), 35 Cal.2d 76 [216 P.2d 455].) Under the circumstances it must be held that there was a substantial compliance with the requirement of this code section."

■ The school bus driver now relies also upon certain language in *Veriddo* v. *Renaud* (1950), 35 Cal.2d 263, 265 [217 P.2d 647] (decided subsequent to the filing of the above quoted opinion of the District Court of Appeal), to the effect that "if compliance with . . . provisions [of Government Code section 1981] is not a prerequisite to suit against . . . [the public employes named therein], then the section appears to be wholly meaningless . . ." However, no claim whatever was filed in the Veriddo case, and the specific point there decided was that section 1981 applied to claims against public officers and employes. It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court. So understood, the quoted statement obviously does not constitute a

holding that compliance with the claim provisions is a prerequisite to the *filing* of suit, as distinguished from the *maintenance* thereof.

The judgments are affirmed.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

EDMONDS, J.—I concur in the judgment as to the school district and the railway company, but believe that the court has now construed section 1981 of the Government Code to the serious disadvantage of employees of public bodies and inconsistently with the prior construction of the statute.

I joined in the decision in the Veriddo case because I agree that the Government Code requires a filing of the claim as a "prerequisite to suit," as was stated in the opinion. The ordinary meaning of "prerequisite to suit" is something which must be done before commencement of the action. The court now holds that a plaintiff has complied with the statute if he filed his claim within 90 days of the accident, although suit may have been commenced upon the day that the accident occurred.

This construction is contrary to one of the reasons for such a claim as stated in the Veriddo case. It was there said that ". . . the Legislature has extended to public officers and employes, who incur liability in the performance of government service, the protection of a claim statute and the privilege of having defended at public expense those damage suits which are enumerated in chapter 6." (35 Cal.2d at p. 265.) And in *Ansell* v. *City of San Diego,* 35 Cal.2d 76, 78 [216 P.2d 455], one of the purposes was stated to be ". . . to provide for the defense of suits for damages against officers, and to authorize the insurance of officers at public expense. . . ."

An employee cannot demand legal defense by the public body employing him until a claim is filed. According to the present decision, the employee will be under the burden of providing his own defense until such time as a claim may be filed. Manifestly, such a rule does not extend to the employee the full protection to which this court has held he is entitled. For these reasons, to effectuate the purposes of section 1981 of the Government Code, as previously construed, I would reverse the judgment against C. E. Flynn.

Spence, J., concurred.