[Civ. No. 10343.   Third Dist.   July 31, 1962.]

JOSEPH  VALENTINE  PESCATORE,  Plaintiff and Respondent, v. WILLIAM  J.  BRYAN  et al., Defendants and Appellants.

Tebbe & Correia, J. P. Correia, J. E. Kleaver and Mark M. Brawman for Defendants and Appellants.

Messner, Hurley & Bigler for Plaintiff and Respondent.

PIERCE, J.—In this personal injury action two vehicles collided in or near an intersection, each vehicle operator (plus the owner of one) sued the other, and the jury's verdict was for the two cross-complainants.

After this verdict all parties moved for a new trial, defendants because they were dissatisfied with the jury's damage

award, plaintiff because he took issue with the jury's fixing of liability on him. The trial judge granted *both* motions upon the ground of insufficiency of the evidence.

■■ Respondent argues that the verdict was a compromise verdict, and we think its size under the facts disclosed justifies the assumption—$100 to Thomas Bryan whose injuries were a brain concussion and scalp wound requiring 33 sutures, who was hospitalized and required medical care, and whose special damages were materially higher than the award; $150 to William Bryan for admitted car damage of $212. No appeal was taken by respondent from the order granting the motion of cross-complainants (hereinafter "appellants"). Appellants appeal from the order granting respondent's motion.

■ The facts, with all reasonable and permissible inferences and intendments favoring respondent, show the following:

The accident occurred at a point on U.S. No. 99 4 miles above Yreka, where a road, called "Old U.S. #99" and also "Old Shasta River Road" (hereinafter called "Old Road") takes off at a tangent from the state highway. According to the scale drawing in evidence (Def's Ex. G) U. S. 99 at this point is a two-lane paved highway running northeast and southwest. The two roads do not intersect at right angles. Old Road leaves the highway on its west side at an acute angle (approximately 15 degrees). Heading northerly from the point of intersection, U. S. 99 makes a wide curve to the left and Old Road parallels it.

The accident happened at about 7:30 p. m. on January 23, 1960. It was dark.

Respondent, a 35-year-old service station operator in Yreka, was driving a pickup on U. S. 99 towards his home, 7 miles north of Yreka. This home was reached by driving north on U. S. 99 and thence onto and along Old Road. He was alone.

As he approached the turn-off on Old Road, driving at approximately 55 miles per hour, respondent looked up U. S. 99 for approaching vehicles and, observing nothing, he commenced his turn diagonally across the highway into Old Road, slowing to 30 miles per hour as he did so. As he crossed the center line of the highway, he observed the headlights of the approaching Bryan vehicle coming around the curve on U. S. 99. The distance then separating the two vehicles was variously estimated at from "better than 100 feet" to "100 yards."

Respondent continued into Old Road. He gave no left-turn

hand signal and his pickup was unequipped to signal mechanically.

The other car, driven by 22-year-old appellant Thomas Bryan (hereinafter called "Bryan"), was southbound from Roseburg. With him was a friend, Thomas Alameda. Bryan was driving at speeds variously estimated at 55, 60 and 65 miles per hour. On the witness stand Bryan testified that he did not remember too much about what happened. (Alameda was not a witness.) Bryan had an impression of seeing the lights of another car and thought they were in his lane. When he first saw the headlights of respondent's car he described it as being "a couple of hundred feet away."

Bryan was driving without eyeglasses. His restricted operator's license reads as follows: "Must wear corrective lens" and that was followed by two "X's" in a little square.

Testifying about this, and having been asked if his problem was not one of "depth perception," Bryan said: "A. They told me when I got the glasses it was for distance. I don't know what they call it. Q. But your problem was determining how far things were from you? A. I couldn't read the board from a distance. Say, I was sitting in the back of the classroom, I couldn't see the board, what the teacher wrote on the board. That's what they told me, the nurse did. That's all I know. They didn't say whether I had to wear them all the time or not."

No expert was produced at the trial for further enlightenment as to appellant's sight defect.

When Bryan first saw respondent's lights his first-described reaction was to drive his car into a ditch, 2 feet deep, running along the westerly shoulder of the state highway.

The point at which the Bryan car went into the ditch was well established. A witness, L. L. Huddle, respondent's father-in-law, visited the scene the next day and found the tire marks. The nearest mark, 10 to 12 feet north of the opening of a culvert, was 45 feet northerly from the point where respondent's car left the pavement edge of U. S. 99 and 40 feet from the point of impact (both as fixed by respondent).

According to respondent's testimony, the Bryan car "jumped the ditch," crossed it, changing its course on an angle of about 30 degrees (related to U. S. 99), and it continued so until it struck respondent's pickup.

There was a wide difference between the respondent's testimony and that offered on behalf of appellants as to the point of impact. Respondent places it at a point 30 feet, or two car

lengths, into the Old Road. Other evidence fixed it as closer to the highway but we must assume that the trial court accepted respondent's proof which, indeed, can be reconciled with the timing of relative speed and distance traveled more easily than can appellants' version.

Respondent also testified that when he saw the Bryan car crossing the ditch and coming towards him he came to a complete stop. This he was able to do because, after entering the Old Road, he was just ''creeping along.'' The front of the Bryan car struck the right front of the respondent's pickup. The photographs in evidence are eloquent as to the force of the impact. Respondent stated this force pushed his vehicle to the left and back. He located the point where the cars came to a rest and his testimony accords with that of the traffic officer. By measurement on the drawing, the distance from the point where respondent fixes the impact to the front of the pickup at rest is 17 feet.

Appellants contend that the facts show no substantial evidence to establish Bryan's negligence or, if he was negligent, that such negligence was the proximate cause of the accident. Also contended is contributory negligence of respondent as a matter of law.

Appellants concede preliminarily that the rule is settled that there can be no reversal unless this court can say ''as a matter of law that there was no substantial evidence to support a judgment for the moving party. . . .'' (*Martin* v. *Smith,* 103 Cal.App.2d 894, 897 [230 P.2d 679].) It has also been stated (by Justice Spence) in *Hawk* v. *City of Newport Beach,* 46 Cal.2d 213, 219 [293 P.2d 48] :

''. . . In passing on a motion for new trial made upon that ground [insufficiency of the evidence], a trial court weighs the evidence and the inferences to be drawn therefrom, and when the motion is granted its action will not be disturbed unless there has been an abuse of discretion; and it cannot be held that a trial court has abused its discretion where there is any evidence which would support a judgment in favor of the moving party.''

In *Brooks* v. *Metropolitan Life Ins. Co.,* 27 Cal.2d 305, 307 [163 P.2d 689], it is stated: ''In considering the sufficiency of the evidence upon such motion the court may draw inferences opposed to those drawn at the trial. . . .'' (See, also, *Richardson* v. *Ham,* 44 Cal.2d 772, 775 [285 P.2d 269] ; 3 Witkin, California Procedure, § 2062.)

The question of Bryan's negligence hinges upon either

excessive speed, inattention to his driving or his having unreasonably misjudged the distance which separated his vehicle from that of respondent when he first saw its lights. Although Bryan's speed was variously estimated at 55, 60 and 65 miles per hour, timing, distances traveled, and force of impact might indicate it was faster. As regards Bryan's inattention to his driving, the evidence shows that as he came around the curve the lights of an approaching vehicle *could* have been seen a block away. If Bryan did not then notice them he was inattentive, which under the circumstances was negligence. On the other hand, if he did see respondent's lights from a block away, how can his subsequent acts be reconciled with the tenets of ordinary care? Traveling that distance at a permissible rate of speed a person of ordinary prudence should have been aware that respondent's vehicle was not in his lane but was crossing it and that it would not only clear the highway but would be well into the other road before Bryan reached it.

The fact that Bryan was driving without eyeglasses, which his motor vehicle operator's license required him to wear, is also significant. Whether the cause of his defect in eyesight was a lack of "depth perception" or inability to observe objects at a distance would make no difference. If, as appellants now contend, Bryan's disability of sight was not such as to cause him to misjudge distances, the calling of an ophthalmologist to destroy the prima facie weight of the operator's license restrictions would have been more convincing than Bryan's uncorroborated statement. The circumstances that some months *after* the accident he had been able to obtain a chauffeur's license only raised a conflict in the evidence.

We cannot agree with the contention that the defective eyesight was not a proximate cause of the accident. The immediate cause was the Bryan car's jumping the ditch and plunging a distance of 40 feet to strike respondent's vehicle in its position well into Old Road. If appellant's act in taking to the ditch was due to his mistaken belief that the lights seen crossing the highway 200 feet or more constituted a hazard, and if that mistake was caused by defective eyesight, then the infirmity was "the efficient cause—the one that necessarily sets in operation the factors that accomplish the injury." (See *Porter* v. *Bakersfield & Kern Elec. Ry. Co.*, 36 Cal.2d 582, 589, note 1 [225 P.2d 223].)

Appellants also contend that respondent was guilty of contributory negligence as a matter of law.

The Vehicle Code rule is that:

"The driver of a vehicle intending to turn to the left at an intersection shall yield the right-of-way to any vehicle which has approached or is approaching the intersection from the opposite direction and which is *so close as to constitute a hazard at any time during the turning movement.*" (Emphasis supplied.) (Veh. Code, § 21801, subd. (a).)

The trial court could have reasonably believed that the Bryan vehicle was not "so close as to constitute a hazard at any time during the turning movement." Who would foresee that the driver of a car 200 to 300 feet away would leave the highway, cross a ditch and pursue one onto another road?

Appellants mention that respondent did not give a hand signal of his intended turn. Such signal is required "in the event any other vehicle may be affected by the movement." (Veh .Code, § 22107.) Whether giving of the signal here was necessary or the failure to give it excusable and therefore not negligent, we need not determine. It was definitely not a proximate cause of the accident under the facts related.

The order appealed from is affirmed.

Peek, P. J., and Schottky, J., concurred.