[Civ. No. 10076.  First Appellate District, Division One.—January 27, 1938.]

JOE OGANDO, Respondent, v. CARQUINEZ GRAMMAR SCHOOL DISTRICT OF CONTRA COSTA COUNTY et al., Appellants.

James F. Hoey, John J. Taheny and Hoey, Hamilton & Turner for Appellants.

David D. Oliphant, Jr., for Respondent.

KNIGHT, J.—The superior court granted plaintiff's motion for a new trial upon the ground of insufficiency of the evidence, and the defendants appeal. The action is for damages, and was brought against the Carquinez Grammar School District and its board of trustees by the father of Aileen Ogando, a ten-year-old child, who died as the result of injuries received while attending school. Defendants' first contention is that under the provisions of chapter 1168 of the Statutes of 1931 (p. 2476) it was necessary for plaintiff as a prerequisite to the commencement of the action to file a verified claim for damages with the clerk of the school district within ninety days after the

accident, which admittedly he did not do, and that therefore
the trial court should have granted defendants' motion for
nonsuit. It has been held, however, that the requirements of
said statute (as it stood prior to its amendment in 1937 [Stats.
1937, p. 585]) were restricted to the class of cases embraced
within its title, namely, to cases founded on the alleged negli-
gence of officers and employees of public and *quasi*-public cor-
porations in connection with the defective or dangerous con-
dition of public streets, highways, bridges, buildings, works
or property of such public or *quasi*-public corporations; and
that cases based on general acts of negligence of such officers
and employees did not fall within the scope of said statute.
(*Jackson* v. *City of Santa Monica,* 13 Cal. App. (2d) 376
[57 Pac. (2d) 226]; *Kenney* v. *Antioch Live Oak School
Dist.,* 18 Cal. App. (2d) 226 [63 Pac. (2d) 1143].) And
here the allegations of the complaint as well as the evidence
adduced at the trial show that the present action is of the
latter class. The trial court properly held, therefore, that
the action was not barred by the provisions of said statute.

Defendants' second and final contention is that in any
event the evidence would be insufficient as a matter of law
to sustain a verdict in plaintiff's favor, and that therefore
the trial court erred in granting a new trial. There is no
merit in the contention. ■ The granting of or refusal
to grant a new trial rests very largely within the discretion
of the trial court—a discretion which is extremely wide; and
its ruling will not be disturbed, especially where, as here, a
new trial has been granted on the insufficiency of the evidence,
unless there is a clear and affirmative showing of a gross,
manifest or unmistakable abuse of the discretion it is called
upon to exercise. (20 Cal. Jur., pp. 27–31.) In other words,
it is only in rare instances and on very strong grounds that the
reviewing court will set aside an order granting a new trial.
(*Morgan* v. *Los Angeles Pac. Co.,* 13 Cal. App. 12 [108 Pac.
725].) ■ Furthermore, as frequently pointed out in the de-
cisions, in considering such a motion it is not only the trial
court's province but its duty to scrutinize and to weigh the evi-
dence, and if in its opinion the facts upon which the decision of
the jury is based are insufficient to justify that decision, or if it
believes that the weight of the evidence is against the decision,
a new trial should be granted, even though the inferences
it may draw are opposed to those drawn by the jury. (20

Cal. Jur., pp. 26, 27.) If, therefore, on appeal the case shows a reasonable or fairly debatable justification for the trial court's order or the evidence presents a situation where reasonable minds might differ in their deductions, said order will not be set aside, even though the court of appellate jurisdiction might take a view different from that of the trial court (*Kramm* v. *Stockton Elec. R. R. Co.*, 10 Cal. App. 271 [101 Pac. 914]; *Springer* v. *Pacific Fruit Exchange*, 92 Cal. App. 732 [268 Pac. 951]), or believe the evidence would be sufficient to support a judgment in the event a new trial had been denied. (*Glascock* v. *Watters*, 136 Cal. App. 713 [29 Pac. (2d) 434].)

Here the evidence is legally sufficient in our opinion to support the inference that the fatal injuries suffered by the child were proximately caused by the defendants' negligence in failing to comply with certain rules for the care and safety of the children while upon the school premises. The main facts established thereby are these: The school recessed regularly at noon, and the lunch period ended at 12:20 o'clock, at which time the children were released to play in the school yards until the beginning of the afternoon school session at 1 o'clock. Between the two wings of the school building there is a court or playground, which was reserved during the noon recess for the younger girls. After eating lunch the group of girls of which the injured girl was one usually engaged in the game of hide-and-seek on the west side of said court, using as the base for their game a wooden door leading to the janitor's room in the west wing of the building. On the day of the accident, upon being released at 12:20 they went immediately into the court to start their game, but found another group of girls playing in their location and using the janitor's door for a base, so the group with which the Ogando child was playing went over to the east wing of the building and selected for a base the middle wooden frame of the French doors leading to the auditorium. Each of the two French doors contained eight panes of ordinary single-strength sixteen-ounce window glass. The children started their game and had been playing approximately fifteen minutes, when the Ogando child, in running swiftly to the doors to reach and touch the base ahead of another girl, ran her outstretched left arm through the glass and jerked it back immediately. The result was that the broken

pane of glass cut a deep gash across her elbow, severing the brachial artery and causing profuse hemorrhage. Confused and terrified, and with blood spurting from the wound, she ran screaming in a circle around the yard. Several of her companions ran to tell the teachers about the accident, and finally an older girl took hold of the injured child and led her to the room of the school nurse and left her there until another girl went to find the nurse. As soon as the nurse arrived she stopped the flow of blood by holding the artery, and summoned a doctor. When the doctor arrived he put a tourniquet on the arm and later a second one, and the child was then conveyed to a hospital in Richmond; but having lost such a great quantity of blood before she was given first aid by the school nurse, she died that same night at 8 o'clock.

Among the rules and regulations promulgated by the state board of education governing the duties of school principals and teachers, and which are doubtless founded on the rule of liability under the common law, are the following: ''Where special playground supervision is not provided (and admittedly there was none here), teachers shall supervise the conduct and direct the play of the pupils of their classes in the school or on the school grounds during intermissions and before and after school. Teachers must exercise a general inspection over the conduct of pupils going to and returning from school. All athletic or social activities, wherever held, when conducted under the name or auspices of any public school, or of any class or organization thereof, shall be under the direct supervision of the school authorities.'' ''1. The attention of governing boards of school districts is called to the liability imposed upon them by law in cases of injury or damage to person or property responsibility for which rests with the district or the officers, agents or employees thereof.'' The teaching staff of the school in question consisted of a principal and twenty-five teachers, but it appears from the evidence, without dispute, that on the day of the accident no supervision whatever was exercised over the children in said court, either at the time they selected the dangerous base and started to play their game, or at any time while the game was in progress; nor was any teacher in the vicinity of the court when the child was injured. Two of the teachers had been assigned to supervise the activities of the chil-

dren playing in this particular court, but under the school rules they did not go on duty as such supervisors until 12:30, following which they remained in the court less than a minute and a half, their duties having called them elsewhere. In this connection one of the teachers testified that as soon as she went on duty as such supervisor she walked from the building into the yard for a distance of twelve or thirteen feet, remained there for a minute or a minute and a half, and was then compelled to reenter the building to stop some noise which was being made in the hall by other pupils; and that during the brief period of time she was in the court she did not observe that any game was in progress. The other teacher testified that upon taking up her duties as supervisor she walked down the court along the east wing, and that she too was compelled to reenter the building at once and go to the location of the merry-go-round, to quiet a disturbance that was going on there; and that when she walked down the court she did not observe any game being played thereon. It was shortly after they reentered the building that the accident happened. One of said teachers frankly stated that had she remained longer in the court she would have noticed the manner in which the children were playing their game, and would have stopped it. Moreover, as plaintiff contends, the trial court was evidently justified in drawing the inference that the presence of a teacher in or near the court while the game was being played would likely have resulted in saving the child's life because she would have taken charge of the injured child at once and either arrested the flow of blood herself or instantly summoned the school nurse.

Therefore, in view of the foregoing facts and circumstances, it is our opinion that the trial court was not unwarranted in concluding that the failure to supervise the conduct and play of the children on the occasion mentioned, as required by said rule of the state board of education, amounted to negligence, and that such negligence was the proximate cause of the child's injury and death; and in that state of the record it is beyond the authority of the appellate court to disturb the ruling granting a new trial.

The order is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 28, 1938.