[Civ. No. 10611. First Appellate District, Division One.—May 2, 1939.]

MARY OWINGS et al., Respondents, v. CHARLES H. GATCHELL, Appellant.

Yale S. Kroloff for Appellant.

Frank V. Kington for Respondents.

KNIGHT, J.—A sedan automobile owned and driven by Charles H. Gatchell, and a roadster belonging to Elmer Owings and driven with his consent by Edwin Coe, collided on the main highway just south of Redwood City at about 1:30 o'clock in the afternoon. Mary Owings, 70 years of age and the mother of Elmer Owings, was riding with Coe at the time of the accident; and on account of the injuries she claims to have sustained therein she joined with her son in bringing this action for damages against the drivers of both automobiles, Mrs. Owings seeking to be compensated for personal injuries, and her son for property damage to his automobile. At the conclusion of plaintiffs' case a nonsuit was granted as to Coe, and upon the submission of the cause to the jury it returned a verdict in favor of the remaining defendant Gatchell. Judgment was entered accordingly, and plaintiffs moved for a new trial, which was granted as against the defendant Gatchell, upon the grounds of insufficiency of the evidence and newly discovered evidence. From the order made in that behalf the defendant Gatchell appeals.

Plaintiffs make no attempt to sustain said order on the second ground specified therein, nor could it be upheld on that ground for the reason that the affidavit filed by Mrs. Owings in support of the motion is wholly insufficient to meet the plain legal requirements governing such matters. The single question presented by the appeal is, therefore, as to the insufficiency of the evidence; and the essential facts appearing therefrom are these: Coe, the driver of the roadster, was a friend of the Owings family, and on the day of the accident, after eating lunch with them at their home in Redwood City, stated he would take the roadster and make some repairs to the upholstery; but before starting the work, he consented to drive Mrs. Owings down the main highway to do some shopping. The highway runs in a northerly and southerly direction, and they entered from the east side, but did not drive upon the paved portion thereof. They turned to the left and drove southerly along the shoulder on the east side for a short distance, and stopped at a store to make some purchases; thereupon they continued to drive southerly along the shoulder of the east side for another short distance, and then turned to the right and started across the highway to the west side. The highway in that vicinity is divided by white lines into three lanes ten feet wide, the east lane being for

northbound traffic, the middle lane for passing, and the west lane for southbound traffic; so that in order to reach the west lane it was necessary for Coe to drive across the east and middle lanes. Just about that time the defendant Gatchell, a clergyman residing in Redwood City, traveling northerly in the east lane of the highway, overtook a truck traveling in the same direction. In order to pass it, he turned into and proceeded up the middle lane, and while still abreast of the truck the roadster suddenly appeared in front of him, and the collision therewith occurred on or near the white line dividing the middle and the west lanes. The truck had just entered the highway from the west side less than 200 feet south of the point of the collision, and crossed over to and proceeded along the east lane. It was loaded high with shrubs and flowers, and Coe admitted having seen its approach before he started to cross the highway in front of it. The defendant Gatchell testified that after overtaking the truck and before starting to pass it, he looked ahead up the middle and west lanes, observed that they were clear of traffic, and then proceeded to pass the truck by turning into the middle lane; that he was driving about thirty miles an hour, and that while still abreast of the truck, with the front wheels of his car two or three feet ahead of the end of the truck, the roadster suddenly appeared in the middle lane directly in front of him, coming diagonally across the highway from the east side, in front of the truck; that he immediately applied his brakes, but was unable to avoid the collision, the left front end of his car striking the left rear end of the roadster.

There is a conflict of evidence as to the movements of the roadster just before it started to cross the highway. Coe testified that after stopping at the store he drove southerly along the east shoulder to a point about fifteen feet north of the northerly corner of Buckingham Street, which enters the highway from the east side but does not cross it; that he stopped at that point with his front wheels about three feet off the paved highway, looked toward the south, saw no traffic coming, then to the north and saw two cars coming from that direction; that he waited until they passed, then looked south again and saw the truck at a distance he estimated to be about 500 feet down the highway, coming north; that he then proceeded to cross the highway at an angle. His testimony in this regard was flatly contradicted, however, by a Mrs. Moore,

who owned and operated a service station immediately north of the northerly corner of Buckingham Street. She testified that Coe did not stop at any point north of said corner, nor at all before starting across the highway; that he drove past her service station, continued on across to the farther side of Buckingham Street and then without stopping at all turned sharply to the right and cut diagonally across the highway in front of the truck. Furthermore, it is certain that when Coe turned to cross the highway at the point fixed by him the truck was less than 500 feet away, because as shown by the map used at the trial, the correctness of which is not disputed, the truck entered the highway less than 325 feet from said turning point. The evidence is conflicting also as to the exact point where the impact occurred. Mrs. Moore testified that as Coe started across the highway he "got in front of the truck and collided right in this middle lane" with the Gatchell car; that at the time of the impact the back part of the roadster was still in the middle lane. The testimony given by the defendant Gatchell agrees with that of Mrs. Moore. He testified that when the impact occurred the rear half or one-third of the roadster was still in the middle lane. Coe was unable to state just where the roadster was when it was struck, his testimony on this point being that it was "pretty close" to the white line dividing the middle and the west lanes; that it was "possible . . . that some portion of the left rear part of the car may have extended a little into the passing lane", but he "could not say for sure". Mrs. Owings testified, however, that the roadster was entirely within the west lane; that they had been traveling therein "maybe 50 or 60 feet, maybe more . . . maybe 100 feet" before the collision occurred. Three other witnesses were called to testify as to the happening of the accident. They were selling oranges from a truck parked on the east shoulder of the highway just south of the point of collision; but only one of them, Andy Gant, was able to give any information at all as to the location of the cars at the time of the collision, and his testimony was quite indefinite. He stated that the rear end of the roadster may have been a little over in the middle lane when it was hit.

■ At the time of the granting of the nonsuit as to Coe, the trial court stated that its order in that behalf was based upon the ground that there was no evidence showing negli-

gence on the part of Coe, and it so advised the jury. But despite such ruling it afterwards submitted the question of Coe's negligence as an issue of fact to the determination of the jury under instructions to the effect that if it found that the accident was proximately caused by negligence on his part, plaintiffs could not recover as against the defendant Gatchell. In this connection it went on to instruct the jury further, and properly so, as follows: ''Under the law of California, a person riding in an automobile cannot recover against a third party, where the driver of that automobile is operating same at the time of the collision, as the servant or agent of the person riding therein, and the said driver of that automobile is guilty of some negligent act or omission, which did in some degree, proximately contribute to the accident, the reason being that under such circumstances the negligence of the driver is imputed to his principal or master. Therefore, if you find that at the time of the collision the driver, Edwin Coe, was operating that automobile in which the plaintiff, Mary Owings, was riding, as the agent or servant of the plaintiffs, and you further find that there was negligence on the part of the driver, Edwin Coe, in the operation of that automobile, which negligence did proximately contribute to the said accident, then you are instructed that the negligence of Edwin Coe is imputed to the plaintiffs and such imputed negligence bars their recovery. . . . The fact that this court has granted a nonsuit in this case on his behalf is not under any condition to be considered by you as any evidence of negligence or lack of negligence on the part of either party.'' Obviously, therefore, by returning a verdict in favor of the defendant Gatchell, the jury must have found either that he was free from any negligence, or if negligent, that Coe, too, was guilty of negligence which contributed proximately to the happening of the accident; and it is quite apparent that the evidence as a whole and particularly the testimony given by Mrs. Moore and the defendant Gatchell is legally sufficient to support the jury's verdict on either ground.

The well-settled rule is, however, that the matter of granting or refusing to grant a motion for a new trial is largely within the discretion of the trial court (*Work* v. *Whittington,* 61 Cal. App. 302 [214 Pac. 474]); that in passing upon such motion the trial court is not bound by the rule of conflicting evidence as is the appellate tribunal (*Huckaby* v.

*Northam,* 68 Cal. App. 83 [228 Pac. 717]; *Smith* v. *Royer,* 181 Cal. 165 [183 Pac. 660]); but must weigh and consider the evidence for both parties and determine for itself the just conclusion to be drawn from it (*Green* v. *Soule,* 145 Cal. 96 [78 Pac. 337]; *Rudin* v. *Luman,* 53 Cal. App. 212 [199 Pac. 874]); and if satisfied that the finding of the jury is contrary to the weight of the evidence, it may grant a new trial (*Gordon* v. *Roberts,* 162 Cal. 506 [123 Pac. 288]); that even though the evidence is not conflicting and all the proof seems to be favorable to one or the other of the parties litigant, the question of the probative force or the evidentiary value of the testimony is nevertheless within the determination of the trial court in a proceeding on motion for a new trial (*Otten* v. *Spreckels,* 24 Cal. App. 251 [141 Pac. 224]; *Roberts* v. *Southern Pac. Co.,* 54 Cal. App. 315 [201 Pac. 958]; *Wulbern* v. *Gilroy Express,* 116 Cal. App. 222 [2 Pac. (2d) 508]).

█ In the present case plaintiffs have not specified any particular facts upon which they rely to sustain the trial court's order granting the new trial. It would appear, however, that if the Gatchell car in attempting to pass the truck crossed over the dividing line between the middle and the west lanes and collided with the Owings car while it was traveling entirely within the west lane, an inference of negligence on the part of the defendant Gatchell may be drawn therefrom; and it would seem that the testimony given by Mrs. Owings that such was the case is sufficient to support such an inference. True, as evidenced by its verdict, the jury was unwilling to accept her observations as being correct; and there is ample justification for the rejection thereof because not only was her testimony on this point contrary to the preponderance of the testimony showing that a portion of the Owings car was still in the middle lane when the Gatchell car collided therewith, but her observation was also that the truck was traveling up the middle lane; whereas, beyond question, as shown by the testimony of all the other witnesses, it was traveling in the east lane. However that may be, the trial court doubtless took a different view and accepted as true the testimony given by Mrs. Owings as to the location of the cars at the time of the impact, and that being so, its conclusion is binding on appeal even though we might differ therewith and agree with the one adopted by the jury. (20 Cal. Jur. 119.) █ In other words, it is the law that so

long as a case presents an instance showing a reasonable or even fairly debatable justification for the action taken by the trial court in granting a new trial, its ruling will not be disturbed even if as a question of first impression the appellate court might feel inclined to take a different view from that of the trial court as to the propriety of its action; and that it is only in rare instances and upon very strong grounds that the determination of the trial court will be disturbed. (2 Cal. Jur., pp. 905, 906.) For the reasons stated we are not prepared to hold herein that the order granting the new trial is without legal justification.

The order is therefore affirmed.

Tyler, P. J., and Gray, J., *pro tem.*, concurred.