[Civ. No. 21003. Second Dist., Div. Two. Oct. 21, 1955.]

MAYBELLE H. KALFUS, Appellant, v. VIRGIL BLANE FRAZE, Respondent.

418

Joseph W. Fairfield and Ethelyn F. Black for Appellant.

Robert A. Cushman for Respondent.

FOX, J.—This case, an action for personal injuries sustained by plaintiff when struck by an automobile, is presented for appellate review for the second time. In the initial trial, the jury returned a verdict in favor of defendant, following which the judge granted plaintiff's motion for a new trial on the ground of insufficiency of the evidence to sustain the verdict. The order was affirmed on appeal (*Kalfus* v. *Fraze*, 126 Cal.App.2d 99 [271 P.2d 573]), where the court observed that the sole question is "whether there was evidence which would have sustained a judgment in favor of the moving party [citations]. We have only to determine whether there was evidence which would sustain findings that defendant was negligent and that plaintiff was free of contributory negligence." Holding that although the evidence as to whether plaintiff was in a crosswalk at the time of the accident was in conflict and that her testimony as to whether she maintained a proper lookout for approaching vehicles was uncertain, the order could be justified on the basis of evi-

dence pointing to defendant's negligence and testimony which, if believed, exculpated plaintiff from contributory negligence.

Upon retrial defendant again prevailed after trial by jury. Plaintiff's motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial were all denied. She now appeals from the judgment, and from the order denying her motion for judgment notwithstanding the verdict.

The evidence adduced at the retrial appears to be substantially similar to that given at the former trial with respect to the issues vital to this appeal. As is our duty, this evidence will be recited in the aspect most favorable to defendant.

The accident occurred on December 6, 1951, in the city of Glendale, in the vicinity of the intersection of Glendale Avenue and Doran Street. Glendale Avenue is a north-south traffic artery 58 feet wide at the scene of the impact. Doran Street proceeds generally in an east-west direction. It is 36 feet wide immediately to the west of Glendale Avenue. It does not cut directly across Glendale Avenue to the east, but jogs about 35 feet to the south as it extends its course on the east side of Glendale Avenue. A marked pedestrian crosswalk traverses Glendale Avenue at Doran and connects the northwest corner of the above intersection with an area immediately above the northeast corner. In conformity with the configuration of the intersection, the crosswalk runs slantingly or diagonally from the northwest to the northeast corner of the intersection; the western end of the crosswalk is about 25 feet north of its eastern extremity. On the east side of Glendale Avenue is a food market with an exit some 30 feet north of the eastern (or lower) side of the crosswalk.

Immediately prior to the accident defendant, who was driving his car easterly on Doran Street with his headlamps burning, was approaching the Glendale intersection. It was then dark, about 5:15 p. m. The traffic signal situated at Glendale Avenue had halted the car ahead of his, but as he was drawing up behind that car, the signal flashed to green. The car ahead thereupon turned right into Glendale Avenue. Defendant testified he shifted into low gear and commenced a left turn. He testified that as he approached the crosswalk while making his turn into the northbound lane of traffic on Glendale Avenue, he was going approximately 5 miles an hour. He saw no one in the crosswalk or anywhere on the street though visibility was good and his path unobstructed. Defendant had virtually completed his turn, still maintaining

the same speed, when he suddenly observed "an object" in front of his car. He testified he thereupon immediately applied his brakes, being then about a "couple of feet" from the point of ultimate impact.

The precise point on the highway at which defendant's car struck plaintiff does not appear with complete certainty or mathematical exactitude, since some of defendant's testimony with relation to an exhibit depicting the intersection was given without knowledge of its scale and required subsequent adjustment. However, there can be no doubt from the record as a whole, giving credence to the competent evidence most favorable to defendant and harmonizing apparent testimonial inconsistencies of witnesses in favor of the judgment (*Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732]), that plaintiff was outside the crosswalk and well to the north of it when the impact occurred. Defendant testified he first observed plaintiff when his car was about 20 feet north of the crosswalk, at which time she was directly in front of the right front fender of his car, about "a couple of feet" away. He at once applied his brakes, and he felt them grip and tighten almost coincidentally with the moment of impact, bringing his vehicle to a stop within 3 or 4 feet. Skid marks measuring 2.8 feet were left by the right front wheel and 4.7 feet by the left front wheel. Immediately after the accident, defendant and a bystander, Mrs. Boldrini, helped move plaintiff to a resting place against a pole at the east curb of Glendale Avenue.

Plaintiff testified that just before the accident befell her, she had completed her shopping at the market on the east side of Glendale Avenue and had emerged therefrom holding a fairly large paper bag containing merchandise in each arm. She testified she turned south and walked to the northeast corner of the intersection. Observing that the traffic signal was green for east and west bound traffic, she did not halt at the curb but kept on walking across Glendale Avenue toward the northwest corner of the intersection. She stated she had an unobstructed view in all directions and that she glanced around in all directions before stepping off the sidewalk and into the crosswalk. She saw no automobile coming from Doran Street with lights on. She testified that she looked straight ahead as she crossed but "I glanced, you know, just glanced from side to side to see that nothing was coming." However, there was read into the record testimony given by plaintiff at the former trial to the effect that she

was looking straight ahead as she crossed the street and did not remember whether she looked in other directions as she walked. She saw the lights of plaintiff's car for the first time almost at the moment she was struck.

Mrs. Boldrini, a disinterested witness, did not see the accident. However, she was standing at the southeast corner of Doran and Glendale waiting for the signal light to change in order that she might walk north across Doran to the northeast corner. She stated that while waiting on this corner and looking in a northerly direction, she did not see "any lady" either on the sidewalk on the east side of Glendale Avenue or walking across the street in the pedestrian crosswalk. Her first awareness of the accident occurred when she heard a scream. She looked in the direction of the sound and saw plaintiff rolling on the ground. She could not say how far plaintiff rolled. She went to plaintiff's assistance, picking her up between 10 and 15 feet north of the north line of the crosswalk.

Another disinterested witness was Arnold Satzinger, a businessman whose office was on the east side of Glendale Avenue, one block south of the intersection here involved. He had left his office and driven north to the intersection, stopping near the southeast side to await a change in the traffic signal. Traffic was heavy that night going north on Glendale Avenue, and other cars were stopped alongside his. While waiting, he first noticed defendant's car when it was about halfway through its left turn traveling at a rate of speed of between 5 and 10 miles an hour. Plaintiff was also in his line of vision. When he first observed her, she was in the street, carrying a grocery bundle, about a car's width from the east curb of Glendale Avenue, and about 15 feet north of the crosswalk. Her path of travel was perpendicular to the east curb of Glendale Avenue. He watched plaintiff's progress until the very moment of the impact which, he stated, took place outside the crosswalk. Under questioning by defendant's counsel, Satzinger marked as S-4 on a map introduced as plaintiff's Exhibit 1 the place which he designated the point of impact. At this time Satzinger was not familiar with the scale of the surveyor's map shown on the exhibit. S-4 proved to be 12½ feet north of the crosswalk, but in his testimony Satzinger later estimated the impact spot was about 20 feet north of the crosswalk. Over objection that it would be an impeachment of his earlier testimony, defendant's counsel requested Satzinger to mark off a point 20 feet north

of the crosswalk according to the map's scale as the point of impact. Under cross-examination by plaintiff's counsel, Satzinger in the end fixed the point of impact as S-4, stating that 12½ feet north of the crosswalk would be nearer correct than 20 feet as the place where plaintiff was struck. He testified defendant's car moved about 5 feet after the impact and that appellant "rolled a little bit" as a result thereof.

At one point in his cross-examination of Satzinger plaintiff's counsel propounded the following series of questions: "Q. Did you discuss your testimony with any representative of the defendant? Mr. Cushman [defendant's counsel] : I will stipulate that he did. The Witness: Somebody called on me after the accident. Q. By Mr. Fairfield: Did you give them a statement? A. Pardon me? Q. Did you give them a statement? A. The company, yes. Q. Did you give it to them in writing? A. I told them as near as I could what happened. Q. Mr. Satzinger, did you give them a statement in writing? A. He wrote a statement out and asked me to sign it, yes. Q. You dictated the information to him and he wrote it out? A. Well, he kept quizzing me as we went along, much like we have done now, and I read it over and signed it." During the redirect examination of Satzinger the written statement referred to by this line of inquiry was received in evidence over the objection that it was hearsay and self-serving. The statement contained a description of the accident, in which Satzinger stated he saw plaintiff crossing the street with two bundles under her arms, one of which was very large, and that she was struck about 25 feet north of the crosswalk.

Richard Thornhill, a police officer who investigated the accident, arrived at the scene five minutes after the accident. He testified to six years of police experience during which he frequently investigated traffic accidents. He stated he took measurements of the position of defendant's car and the length of the skidmarks. Defendant did not move his car after the accident; its right front wheel was 18 feet west of the east curb of Glendale Avenue and 16 feet north of the north curb of Doran measured from the northwest corner. Thornhill gave his opinion, over objection that no foundation was laid, that the point of impact was at a point he marked T-2 on Exhibit 1, approximately 25 feet north of the crosswalk. Upon cross-examination, Thornhill testified he based his opinion only on a statement made to him by defendant and "another witness." Plaintiff's counsel thereupon made a motion to strike Thorn-

hill's testimony concerning the point of impact. The court denied the motion on the ground that this affected only the weight to be accorded the evidence and not its admissibility. This, of course, was error. ■ A police officer with proper training and experience in the investigation of traffic accidents and the submission of reports on the facts and causes of such accidents may give expert testimony as to the point of impact when his opinion derives from an examination of the physical evidence or indicia at the scene. (*People* v. *Haeussler,* 41 Cal.2d 252, 260-261 [260 P.2d 8]. ■ But it is error to receive such evidence when the expert's opinion as to the point of impact is founded on statements made to him by other persons. (*Ribble* v. *Cook,* 111 Cal.App.2d 903, 906 [245 P.2d 593].) ■ However, where, as will be established, independent and competent evidence to substantially the same effect from other witnesses is placed before the jury the erroneous admission of such cumulative evidence is ordinarily not prejudicial. (*Spoerer* v. *Baker,* 116 Cal.App.2d 664, 669 [254 P.2d 113] ; *Mullanix* v. *Basich,* 67 Cal.App.2d 675 [155 P.2d 130] ; *Hoffart* v. *Southern Pac. Co.,* 33 Cal.App.2d 591, 605 [92 P.2d 436].) This is such a case. (*Zelayeta* v. *Pacific Greyhound Lines,* 104 Cal.App.2d 716, 723 [232 P.2d 572].)

Donald M. MacLean, a police sergeant with extensive training in traffic accident investigations, testified that a normal reaction time of three-fourths of a second is required by the average person to apply his brakes after he had sensed danger. Part of his testimony dealt with where a person with normal reaction time would have to make up his mind to stop his car in order to bring it to a halt at the position defendant's car was found by Thornhill. (Marked T-1 on Exhibit 1.) MacLean submitted estimates based on rate of speed, the existence of a dry asphalt road surface and the application of good brakes. Under these assumptions, he estimated a driver proceeding at 5 miles an hour would bring his car to a stop within 6.7 feet from the time he first apprehended danger.

Apparently as the foundation for defendant's Special Instruction No. 1, based on section 563 of the Vehicle Code,* evidence was given with respect to the existence of traffic signals at the intersection of Glendale and Monterey Avenue,

---

*The pertinent part of section 563 of the Vehicle Code, as it read at the time of the accident, provides: "Between adjacent intersections controlled by traffic control signal devices or by police officers pedestrians shall not cross the roadway at any place except in a crosswalk."

the latter being one block north of Doran. Officer Thornhill testified that on the day of the accident traffic signals were located there. Defendant testified as follows upon examination of this subject by his counsel: "Q. Now are there any traffic signal lights at the intersection of Monterey and Glendale Avenue? A. There are. Q. Were there traffic signal lights there at the time of the accident on December 6, 1951? A. Yes, sir. I have been traveling that route between four and five years, and those lights were there all the time, both Glendale and Doran. Q. *Were those traffic signal lights showing red, green, and amber?* A. Yes, sir."

Plaintiff devotes a section of her briefs to a critique of the proposition that the point of impact occurred at the place asserted by defendant in his testimony. She claims this testimony is "fantastic," and in arguing what she terms "the inherently improbable testimony of defendant Fraze that the position where he stopped his moving vehicle is the point where he made up his mind to stop," she engages in certain mathematical calculations designed not only to discredit this testimony but to place her "close to or in the crosswalk" at the moment of impact. This whole line of reasoning must fail not only because it seizes as the basis for its vitality inconsistencies or inferences in defendant's testimony favorable to herself, but she arbitrarily uses as defendant's rate of speed 10 miles an hour whereas he testified he was proceeding at about 5 miles an hour. ■ Where the existing circumstances militate against precise mathematical calculations, this court has stated the rule that on appeal it "will not make dubious calculations based upon evidence of time and distance and speed (which evidence after all consists of mere opinions of witnesses) for the purpose of upsetting a verdict of the jury as to the facts." (*Cooper* v. *Stevens,* 17 Cal.App.2d 746, 748 [62 P.2d 763]; *Turner* v. *Clennell,* 9 Cal.App.2d 736, 738 [50 P.2d 851]; *Powell* v. *Powell,* 40 Cal.App. 155, 159 [180 P. 346].) Plaintiff's argument is also specious in that it tacitly implies that unless the point of impact was exactly at the spot designated by defendant then his entire testimony on this subject was entitled to no validity. While it is true that defendant was a difficult witness and that some of his testimony was loose and imprecise, his testimony is clear that plaintiff was substantially north of the crosswalk when he hit her, even if not exactly where stated by him. In this important phase of his testimony he did not waiver. If there were inconsistencies or uncertainties in his testimony, re-

flecting faulty observation or memory, it was for the jury, and not this court, to resolve them and accept such portion of his testimony as they believed true. (*Stromerson* v. *Averill*, 22 Cal.2d 808, 814-815 [141 P.2d 732] ; *Sidney* v. *Martin Iron Works*, 105 Cal.App.2d 295, 298 [233 P.2d 128].)

While there is no support for plaintiff's theory that she was in or near the crosswalk other than her own testimony, there is ample evidence in support of a determination that she was at or near the point of impact claimed by defendant when hit. Satzinger testified that the point of impact was at least 12½ feet north of the crosswalk, but in a statement made to investigating police officers immediately after the accident, when his recollection was presumably fresher and keener, he estimated plaintiff was about 25 feet north of the crosswalk when struck. Mrs. Boldrini saw no one in the crosswalk when she looked in that direction and estimated that when she assisted plaintiff after the accident the latter was between 10 and 15 feet north of the crosswalk. She also stated that the pole on the east curb of Glendale Avenue against which she leaned plaintiff was approximately opposite the place where she picked plaintiff up. This pole is more than 25 feet north of the crosswalk and would tend to indicate that plaintiff was farther north of the crosswalk than her estimated distance. Officer MacLean testified that a driver with normal reactions, going 5 miles an hour, could have stopped within 6.7 feet after first noting a dangerous situation, thus lending credence to the physical possibility of defendant's having struck plaitniff about 20 feet north of the crosswalk. In short, there was testimony from three disinterested witnesses which categorically supports defendant's theory that plaintiff never used the pedestrian walk after she left the market and that she was fairly close to the point of impact given by defendant. While some of this evidence was conflicting or inconsistent, it was for the trier of fact to resolve these matters and accept such portions thereof as carried greater persuasive force while discounting the rest. (*Chan* v. *Title Ins. & Trust Co.*, 39 Cal.2d 253, 258 [246 P.2d 632] ; *Sukiasian* v. *Shakarian*, 115 Cal.App.2d 798, 801 [252 P.2d 956] ; *Hershey* v. *Laswell*, 63 Cal.App.2d 219, 222 [146 P.2d 509].)

Plaintiff urges that defendant's counsel, in asking his witness Satzinger, to indicate a point 20 feet north of the crosswalk on Exhibit 1, was thereby permitted to inpeach his earlier testimony that the point of impact occurred at S-4,

which measured 12½ feet north of the crosswalk. An analysis of the testimony bearing on this matter lends itself to no such interpretation. Like many a witness trying to estimate distances long after the event in the tension of a courtroom atmosphere, Satzinger did not possess the gift of total or exact recall. Before being apprised of the scale of the map he placed the point of impact at S-4. Moments later, in the course of his testimony, he stated that plaintiff was about 20 feet north of the crosswalk when struck. This did not coincide with point S-4, as Satzinger observed when he marked it to scale on the exhibit. But it is manifest that no attempt was being made to impeach Satzinger's testimony, into which an apparently innocent discrepancy had crept through inadvertence, confusion or inaccurate recollection. Counsel asked no impeaching questions nor did he attempt to bring out any inconsistency or discredit the verity of any of Satzinger's testimony. The testimony relating to the 20-foot distance was Satzinger's own estimate, given while responding to an unobjectionable question. In view of two successive answers which were at variance with each other, counsel did no more than try to elucidate Satzinger's testimony by giving him an opportunity to reconcile or explain his answers and put them in their fair and proper light before the jury. In this context we perceive neither error nor foundation for any just contention that Satzinger's testimony was being impeached. (*Cummins* v. *Yellow & Checker Cab Co.*, 127 Cal. App. 170, 179 [15 P.2d 536]; *People* v. *Curtis*, 36 Cal.App.2d 306, 322 [98 P.2d 228]; *People* v. *Zammora*, 66 Cal.App.2d 166, 216-217 [152 P.2d 180].)

■ Error is predicated on the ruling admitting into evidence the statement given by Satzinger to defendant's investigator after plaintiff had examined Satzinger regarding the execution of such a document. Conceding the reception of this document was error (see *Garrison* v. *Pearlstein*, 68 Cal.App. 326, 332-333 [229 P. 348]), it was certainly not prejudicial. The crucial part of this statement was Satzinger's declaration that plaintiff "was about 25 feet north of the crosswalk at the north side of Doran when she was struck by the turning car." However, pursuant to a stipulation entered into by the parties at the previous trial, a statement made by Satzinger to police officers, couched in substantially the same language, was read to the jury at the second trial. This statement recited in part: "His (defendant's) turn was almost completed when he struck injured

pedestrian. She was not in crosswalk. Chevrolet (defendant's car) was heading north on Glendale Avenue about 25 feet north of crosswalk when he struck her.'' It is thus clear that the admission of the statement complained of, being essentially cumulative and repetitive of testimony received by stipulation, worked no such prejudice as would result in a miscarriage of justice. (*Long* v. *California-Western States Life Ins. Co.*, 43 Cal.2d 871, 879 [279 P.2d 43]; *Lail* v. *Lail*, 133 Cal.App.2d 610, 621 [284 P.2d 907]; *Graham* v. *Consolidated M. T. Co.*, 112 Cal.App. 648, 651 [297 P. 617].) ▮ This being so, plaintiff has not sustained her burden of showing that the claimed error was sufficient to justify a reversal. (*Cucinella* v. *Weston Biscuit Co.*, 42 Cal.2d 71, 82 [265 P.2d 513]; *Vaughn* v. *Jonas*, 31 Cal.2d 586, 601 [191 P.2d 432]; *Pizer* v. *Brown*, 133 Cal.App.2d 367, 373 [283 P.2d 1055].)

There is no merit in plaintiff's argument that the court should have instructed the jury that defendant was negligent as a matter of law and, the facts being substantially the same, that the previous appeal establishes as the law of this case that defendant's negligence was the sole proximate cause of the accident. Her contentions proceed from a misconception of the significance of the doctrine of ''law of the case'' and of what was actually decided in the former appeal from the order granting plaintiff a new trial. (*Kalfus* v. *Fraze*, 126 Cal.App.2d 99 [271 P.2d 573].) In that case, the court pointed out it was simply determining whether there was any evidence in the record to support a judgment in favor of the plaintiff. ▮ It is well settled that a very wide latitude is given to the trial court in the matter of granting a new trial on the ground of insufficiency of the evidence to justify the verdict, especially where, as conceded by plaintiff's briefs in the former case, there is substantial conflict in the evidence. (*Anderson* v. *Dahl*, 121 Cal.App. 198, 200 [8 P.2d 883]; *Springer* v. *Pacific Fruit Exchange*, 92 Cal.App. 732, 734 [268 P. 951]; *Ogando* v. *Carquinez Grammar Sch. Dist.*, 24 Cal.App.2d 567, 569 [75 P.2d 641].) ▮ As the numerous decisions indicate, the trial court exercises its independent discretion in passing on the motion for new trial, and if it believes the weight of the evidence is against the decision, it may grant a new trial even though the inferences it may draw are opposed to those drawn by the jury. (*Ogando* v. *Carquinez Grammar Sch. Dist., supra*; *Owings* v. *Gatchell*, 32 Cal.App.2d 482, 487-488 [90 P.2d 368]; 20 Cal.Jur., 26, 27.) ▮ If the order granting the new trial

can be upheld on any rational view of the evidence, it will not be disturbed on appeal (*Cadwell* v. *Borough,* 122 Cal. App.2d 188, 190 [264 P.2d 580] ; *Estate of Standing,* 99 Cal. App.2d 668, 674 [222 P.2d 465, 223 P.2d 255] ) even though the appellate court might take a view different from that of the trial court (*Ogando* v. *Carquinez Grammar Sch. Dist., supra,* p. 570; *Springer* v. *Pacific Fruit Exchange Co., supra,* p. 735), or believe the evidence would be sufficient to support the judgment in the event a new trial had been denied. (*Glascock* v. *Watters,* 136 Cal.App. 713, 715 [29 P.2d 434] ; *Abrams* v. *American Fid. & Cas. Co.,* 69 Cal.App.2d 426, 431 [159 P.2d 62].)

In the light of these principles of appellate review, it is clear that the decision on the prior appeal was concerned simply with the matter of whether there was any basis in the evidence to support the granting of a new trial after verdict for defendant and in so doing it was necessarily presenting the strongest statement possible of plaintiff's case in determining ''whether there was evidence which would have sustained a judgment in favor of the moving party [plaintiff].'' The decision in the former case was concerned simply with the underlying question of whether the court had abused its discretion in granting a new trial. (*Cadwell* v. *Borough, supra.*) Had plaintiff prevailed upon the second trial and had defendant presented an appeal upon the ground of the insufficiency of the evidence, the facts being the same, the ''law of the case'' as announced in the former appeal would have precluded reconsideration of this question and required an affirmance. ▮▮▮ But the mere fact that the prior opinion held there was sufficient evidence to support a verdict for plaintiff and thus upheld the granting of a motion for a new trial is not to say that the record would not have equally supported the judgment for the defendant had the motion for new trial been denied. (*Glascock* v. *Watters, supra*; *Abrams* v. *American Fid. & Cas. Co., supra*; *Ogando* v. *Carquinez Grammar Sch. Dist., supra.*) A reading of the prior opinion clearly reveals that the court did not hold that the evidence necessarily required a finding that defendant was negligent as a matter of law or that it conclusively established that plaintiff was free of contributory negligence. The decision does not presume to indicate any view with respect to the ultimate determination of the *issues of fact* presented in this litigation. It goes no further than to state that (1) there was evidence sufficient to justify a finding

of defendant's negligence; (2) that although the question of whether plaintiff was in the crosswalk was conflicting, her testimony, *if believed,* was sufficient to justify findings that she used the crosswalk and exercised due care for her safety, and (3) if plaintiff was only *slightly* outside the crosswalk when struck, this would not have been a proximate cause of the accident.

But these observations, based on the necessity of resolving all intendments in favor of the order and of drawing all inferences beneficial to the plaintiff from the evidence, were not conclusive on the jury evaluating the same testimony at the second trial and did not foreclose it from exercising its own judgment as to the weight of the evidence, the credibility of the witnesses and the proper inferences and conclusions to be drawn therefrom. (*Kramm* v. *Stockton Elec. R. Co.,* 10 Cal.App. 271, 279-280 [101 P. 914].) In the case last cited, there were three appeals. In the first, verdict for plaintiff was set aside upon motion for new trial. Plaintiff was nonsuited in the second trial, but this was reversed on appeal. In the last trial, the jury again found for plaintiff and again the defendant's motion for new trial was granted. Upon appeal one of plaintiff's arguments was that the reversal of the nonsuit after the second trial determined the law of the case and necessitated a reversal of the order granting defendant a new trial. In refuting this argument, the court quoted the following language from *Allen* v. *Bryant,* 155 Cal. 256 [100 P. 704], on this subject (p. 280): "The narrow class 'of cases in which the doctrine will be held to apply to evidence and the rigid limitation upon the application of the doctrine will be found well expressed in *Wallace* v. *Sisson,* 114 Cal. 42 [45 P. 1000] . . . It is there said: 'But, where the fact which is to be decided depends upon the credit to be given to the witnesses whose testimony is received, or the weight to which their testimony is entitled or the inferences of fact that are to be drawn from the evidence, the sufficiency of the evidence to justify the decision must be determined by the tribunal before which it is presented and is not controlled by an opinion of the appellate court that similar evidence at a former trial of the cause was insufficient to justify a similar decision.' " Of similar import is the case of *Woods* v. *Walker,* 57 Cal.App.2d 968 [136 P.2d 72], an appeal by plaintiff from an order granting defendant's motion for a new trial. In a prior appeal an order denying defendant's motion for judgment notwith-

standing the verdict was affirmed and plaintiff contended this was the law of the case on its appeal from the order granting plaintiff a new trial. The court rejected this argument, remarking that the mere fact that there may have been sufficient evidence to justify denial of defendant's motion for judgment notwithstanding the verdict did not preclude the trial court from granting defendant's motion for a new trial upon its own appraisal of the evidence (p. 971).

These cases clearly illustrate the fallacy of plaintiff's argument and express the principles here controlling. The question of law decided on the prior appeal was that there was sufficient evidence in favor of plaintiff which rendered proper the order granting her a new trial—not that such evidence required a finding in her behalf upon the second trial. (*Kramm* v. *Stockton Elec. R. Co., supra,* (p. 280).) The question of the credibility of the witnesses, the probative weight of their testimony, and the legitimate inferences to be deduced therefrom remained as matters addressed to the jury at the second trial. ▮ Although the general rule is that a driver's failure to maintain such lookout as would enable him to observe all that may be readily seen may constitute negligence as a matter of law (*Berlin* v. *Violett,* 129 Cal.App. 337, 340 [18 P.2d 737]; *Holibaugh* v. *Ito,* 21 Cal.App.2d 480, 484 [69 P.2d 871]), where, as in the present case, the driver testifies that he did in fact look, the question of whether he looked with proper care and saw all that he should have seen is one of fact for the determination of the court or jury. (*Leader* v. *Atkinson,* 49 Cal.App.2d 265, 267 [121 P.2d 759]; *Prato* v. *Snyder,* 12 Cal.App.2d 88, 96 [55 P.2d 255]; *Hontou* v. *Orvis,* 42 Cal.App.2d 585, 588 [109 P.2d 395]; *Lenning* v. *Chiolo,* 63 Cal.App.2d 511, 515 [147 P.2d 410]; *Ribble* v. *Cook,* 111 Cal.App.2d 903, 907 [245 P.2d 593].) In language singularly apposite to the instant case, drawn from one of the authorities cited by plaintiff, the court, in *Ribble* v. *Cook, supra,* states: "Although the question of defendant's being negligent as a matter of law is a close one, we do not think that we can say that either decedent or defendant was guilty of negligence as a matter of law. While to look and not see what is plainly visible may, under some circumstances, be negligence as a matter of law (*Huetter* v. *Andrews,* 91 Cal.App.2d 142 [204 P.2d 655]) that question is usually one of fact for the jury (*Leader* v. *Atkinson, supra; Prato* v. *Snyder, supra*), and it was a fact question here." That is the rule here applicable.

As a reviewing court, we cannot say that from the facts a reasonable person could draw but one inference, namely, that defendant was guilty of negligence in the operation of his automobile at the time and place of the accident. The evidence shows that the accident occurred at night, while defendant was in the process of completing a turn after having already passed beyond the pedestrian lane and after he had looked ahead and failed to see anyone in the street. He first saw plaintiff when she suddenly loomed up 2 feet or so in front of the right side of his car. Under the circumstances, it was a question of fact for the jury as to whether defendant was maintaining a proper lookout for the appearance of persons who might be about to step into the path traveled by his car. (*Giles* v. *Happelly*, 123 Cal.App.2d 894, 899 [267 P.2d 1051]; *Ribble* v. *Cook, supra.*) The jury might reasonably have concluded that although the street was lighted, defendant's failure to observe plaintiff was excused by the fact that she stepped quickly from the curb well beyond the crosswalk and appeared so suddenly in front of his car that there was no opportunity to avoid the impact. This is borne out by plaintiff's testimony that she did not hesitate at the curb before crossing the street and that she herself did not see the lights of plaintiff's car until it was virtually upon her. At the least, the evidence is not such that the court is impelled to say reasonable men could and must draw only the inference of defendant's negligence.

Furthermore, the jury might, with equal tenability, have found that at the time of the accident, plaintiff was some 20 feet or so north of the crosswalk, that she was looking straight ahead and paying no attention to the direction of approaching vehicles, that had she looked to her left she would have seen the headlights of defendant's slowly moving vehicle in ample time to avoid the impact by yielding the right of way, and that her failure to use due care by crossing outside a crosswalk and failing to look out for approaching traffic was either the sole proximate cause or at least a contributing cause of the accident. A pedestrian who crosses a busy thoroughfare at night well beyond the crosswalk looking straight ahead and is struck by a car approaching from the quarter from which traffic was to be expected may well be regarded as not having exercised the vigilance required of a reasonably prudent person. (*Sheldon* v. *James*, 175 Cal. 474, 479 [166 P. 8, 2 A.L.R. 1493]; *Finkle* v. *Tait*, 55 Cal.App. 425, 432-433 [203 P. 1031]; *Wagy* v. *Brave*, 133

Cal.App. 413, 416 [24 P.2d 209] ; *Ramsperger* v. *Los Angeles M. C. Co.*, 4 Cal.App.2d 673, 674 [41 P.2d 562] ; *Francis* v. *Riddle*, 15 Cal.App.2d 282, 286 [59 P.2d 532] ; *Gaston* v. *Hisashi Tsuruda*, 5 Cal.App.2d 639 [43 P.2d 355].) In the case of *Finkle* v. *Tait, supra,* plaintiff, a pedestrian, was crossing Hollywood Boulevard at night carrying a box of raisins on his shoulder. Defendant driver had her headlights on and testified she "could see a great distance" but did not observe plaintiff until he appeared suddenly directly in front of her car. In denying a petition for a hearing, the Supreme Court stated (pp. 432-433) : "We deem it proper to say that, upon looking into the evidence in the record, we are of the opinion that the direction to the jury to return a verdict for the defendant was warranted on the ground that the negligence of the decedent, Nathan Finkle, was a proximate cause of the collision with the defendant's automobile. It occurred after dark on a public street; the headlights of the automobile were lighted and would have been plainly visible to him if he had looked. The automobile was going at a speed not exceeding fifteen miles an hour. He was crossing the street at the time and it was a part of his duty to use such reasonable ordinary care as the conditions demanded to see passing vehicles and avoid colliding with them. [Citations.] A failure by him to exercise such ordinary care would be negligence on his part. The only evidence on the subject shows that the headlight was in good order and that it was clearly visible at a considerable distance. It follows, therefore, that he either failed to take the trouble to look for automobiles on that side of the street as he crossed, or that he saw the automobile and carelessly walked in front of it." In the instant case, it is not unlikely that the juries in both trials concluded, in finding against plaintiff, that after finishing her shopping and leaving the market with two large bundles of groceries, plaintiff did not walk to the corner crosswalk but attempted to cross the street north of the crosswalk without taking care to observe the condition of traffic and that her failure to do so was one of the proximate causes, if not the only one, of her injury.

Plaintiff complains of the reading of defendant's Special Instruction No. 1 which quoted section 563 of the Vehicle Code to the effect that pedestrians must not cross the roadway against a red or stop signal where traffic is controlled by a traffic signal control device and must cross only in a crosswalk between adjacent intersections so controlled, with

the further statement that a violation of this provision constitutes negligence *per se*. Relying on *Brown* v. *Regan*, 10 Cal.2d 519 [75 P.2d 1063], and *Quinn* v. *Rosenfeld*, 15 Cal. 2d 486 [102 P.2d 317], plaintiff argues that this was error because there was no testimony that the traffic light on Monterey and Glendale was in actual operation at the time of the accident. The effect of those cases is obviated by testimony which supplies the deficiencies there lacking. Defendant testified that not only were signal lights located at the corner of Glendale and Monterey, which he was approaching at the time of the accident, but that those "traffic signal lights [were] showing red, green and amber." This clearly indicates they were then in operation. In this connection, plaintiff professes to have been prejudiced by a statement of the court during the course of the argument to the jury by defendant's counsel, who had remarked that the court would instruct that a violation of section 563 constituted negligence *per se*, "which means guilty of negligence as a matter of law." At this point, plaintiff's counsel objected, stating: "That is not correct." The court thereupon remarked: "I think it is, counsel." Plaintiff contends that in this colloquy, "by advising the jury that negligence per se and negligence as a matter of law are the same, the court took away from the jury the prerogative of determining whether the plaintiff's alleged violation of section 563 of the Vehicle Code was a contributing factor to the accident." If the record showed nothing further, there might be considerable force in this point. But any intimation of prejudice by this incidental remark of what the judge thought the law to be is completely dispelled by his instructions to the jury bearing on this point. The court specifically instructed that a violation of section 563 merely constituted negligence *per se*. Immediately following this, the court instructed: "Now, conduct which is in violation of that section just read to you constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he or she was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence. In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so

unless causes, not of his own intended making, induce him, without moral fault, to do otherwise.'' This was followed by another instruction: ''However, in this action, a violation of law is of no consequence unless it was a proximate cause of, or contributed in some degree as a proximate cause to an injury found by you to have been suffered by the plaintiff.'' It may be plainly seen from the above that the court very clearly told the jury that even though they should find plaintiff had violated section 563, this was of no consequence unless it proximately caused or contributed to her injury. Under these circumstances, we do not think the jury would have been misled or prejudiced by the comment made by the court. (Cal. Const., art. VI, § 4½.)

 Finally, plaintiff attacks the court's failure to give her requested special instructions numbered from 2 through 7. The first part of Instruction Number 2 quoted section 562 of the Vehicle Code relative to the obligation of a pedestrian crossing a roadway outside a crosswalk to yield the right of way to vehicles on the roadway and the corollary obligation of a motorist to exercise due care for the safety of pedestrians on the roadway. Instruction Number 3 was to the effect that a pedestrian is not precluded from recovering even though crossing between intersections, the driver of a car being bound to anticipate pedestrians and keep a proper lookout to avoid injuring them, if possible, by the exercise of due care. The substance of these proposed instructions was covered in the BAJI 201 series, which instructed on the reciprocal obligations of the driver and pedestrian to exercise care in using highways and of the driver's duty to be vigilant, to keep a lookout for conditions on the highway, and to use due care to avoid a collision with any person thereon even when such driver has the right of way. This plainly informed the jury that plaintiff might recover irrespective of her position on the highway if she was exercising due care and if defendant was derelict in his duty of exercising due care in the operation of his vehicle, even though he might have the right of way. Since these instructions fully and fairly informed the jury as to the legal rights and duties of the respective parties, no prejudice attaches from the failure to give other instructions to the same effect couched in different language. In addition, Instruction Number 2, taken as a whole, was objectionable because of the language used in exposition of the meaning of Vehicle Code, section 562. In particular, the statement that if plaintiff exercised

due care in crossing the highway under existing circumstances she "was entitled to proceed and she was not obligated to yield the right of way in any event . . ." was a garbled, confusing, and inaccurate paraphrase of the discussion in *Shipway* v. *Monise*, 59 Cal.App.2d 565, 571, 572 [139 P.2d 60].

Since the jury was properly instructed on this branch of the case, the court was not required to modify an instruction which is inaccurate or misleading by winnowing out what is improper. (See many cases collected, 24 Cal.Jur. § 77, p. 802.)

Plaintiff's Instruction Number 4 was properly refused. That instruction reads in part that "a pedestrian is not required to anticipate the presence of automobiles on the wrong side of the street nor is he required to be especially alert to keep a lookout for vehicles in a direction where they are not anticipated." This instruction is vulnerable for two significant reasons: In the first place, being predicated on the assumption that defendant was violating the Vehicle Code, it omitted the important element that it is only a person who is himself free from negligence who can rely on the presumption that another will not violate the law. (*Porter* v. *Bakersfield & Kern Elec. Ry. Co.*, 36 Cal.2d 582, 586 [225 P.2d 223]; *Doyle* v. *Loyd*, 45 Cal.App.2d 493, 496 [114 P.2d 398]; *Fietz* v. *Hubbard*, 59 Cal.App.2d 124, 129 [138 P.2d 315].) In the second place, the instruction assumes that defendant approached from a direction not to be anticipated, which is completely inapplicable to the evidence. There is no evidence either that defendant was on the wrong side of the road or that he came from a direction not to be anticipated.

Special instructions Numbers 5 and 6 were likewise refused for cogent reasons. These instructions singled out the evidence relating to the point of impact as testified to by defendant and then indulged in a discussion of where a car traveling at 10 miles an hour would stop based on a designated braking and reaction time and the physical condition of the road, vehicle and driver. The vice of these instructions is clearly shown in *Jesse* v. *Giguiere*, 24 Cal. App.2d 160, 165-166 [74 P.2d 310], where, in dealing with analogous instructions, the court brands them as but attempts to pick out and stress specific and isolated parts of the evidence in violation of the well settled rules that instructions should not draw the jury's attention to particular facts and that it is proper to refuse instructions which overemphasize

a specified item of evidence by singling it out and making it unduly prominent. (*Dodge* v. *San Diego Elec. Ry. Co.*, 92 Cal.App.2d 759, 764 [208 P.2d 37] ; *Davis* v. *San Francisco*, 45 Cal.App.2d 443, 446 [114 P.2d 359] ; *Stuart* v. *Preston*, 2 Cal.App.2d 310, 322 [38 P.2d 155, 39 P.2d 441] ; *McNally* v. *Casner*, 128 Cal.App. 680, 685 [18 P.2d 94].) It is also appropriate to observe that instruction Number 6 selected a speed by defendant of 10 miles an hour as the focus of its hypothesis and then embarked on calculations based on certain physical conditions. As stated in *McNally* v. *Casner, supra*: "There was no more reason for emphasizing those particular facts than any others appearing in evidence. All of the evidence was before the jury for their consideration in deciding the case."

Instruction Number 7 commences thus: "But if it be assumed that Mrs. Kalfus was a few feet outside of the crosswalk at the time she was struck, *which is the most favorable construction of the testimony that the defendant can reasonably claim*, that fact is unimportant." (Emphasis added.) It was clearly open to criticism as being an unfair, misleading and argumentative charge on a question of fact and was properly refused.

From what we have said in the preceding discussion, there is no merit in plaintiff's further contention that her motion for a judgment notwithstanding the verdict was incorrectly denied.

The judgment and the order denying plaintiff's motion for judgment notwithstanding the verdict are affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 14, 1955.